*This opinion is subject to revision before final publication in the Pacific Reporter*

**2018 UT 25**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

GLORIA RODRIGUEZ,
*Appellant,*

*v.*

THE KROGER COMPANY and J&I MAINTENANCE,
*Appellees.*

No. 20161012
Filed June 12, 2018

On Direct Appeal

Third District, West Jordan
The Honorable Judge L. Douglas Hogan
No. 130400905

Attorneys:

Daniel F. Bertch, Kevin K. Robson, Salt Lake City, for appellant

Lloyd R. Jones, Salt Lake City, for appellees

JUSTICE PEARCE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PETERSEN joined.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1 Gloria Rodriguez arrived at a Smith's grocery store shortly after it opened at 6:00 a.m. to purchase her breakfast. As she walked toward aisle 13, she slipped on a puddle of soapy water. Rodriguez fell, injuring her head, neck, and shoulders. Rodriguez sued The Kroger Company and Smith's Food & Drugs Centers, Inc. (collectively, Smith's), the janitorial company Smith's contracted with to clean the floors, and the independent contractor the janitorial company hired todo the work. Rodriguez settled with the independent contractor before trial. At trial, a jury apportioned 5 percent of the fault to Smith's, none of the fault to the janitorial

company, 75 percent of the fault to the independent contractor, and 20 percent of the fault to Rodriguez herself. After trial, Rodriguez argued that Smith's and the janitorial company were liable for the independent contractor's share of the damages. The district court disagreed and entered judgment based on the jury's allocation of fault. The district court also awarded Rodriguez 5 percent of her costs. Rodriguez appealed.

¶2 Rodriguez challenges the district court's final judgment. Rodriguez contends that because Smith's was charged with a nondelegable duty to keep its premises safe, the court should have required Smith's to pay damages for the independent contractor's negligence in addition to its own. Rodriguez also claims that the nondelegable duty doctrine mandated that the district court enter judgment against the janitorial company for the damages flowing from the independent contractor's negligence.

¶3 We conclude that Smith's is liable for the damages the independent contractor caused. But because Rodriguez did not demonstrate that the janitorial company also assumed Smith's nondelegable duty, we conclude that the district court did not err by refusing to enter judgment against the janitorial company for the independent contractor's negligence. Additionally, we conclude that costs need not be allocated in proportion to a party's fault under the Liability Reform Act, and remand for a redetermination of costs. Accordingly, we reverse the decision of the district court in part, affirm in part, and remand.[1]

## BACKGROUND

¶4 Smith's contracted with J&I Maintenance to clean its floors. In turn, J&I contracted with Benigno Galeno to perform the cleaning services.[2] While cleaning the store one night, Galeno left a puddle of water at the end of aisle 13.

---

[1] Smith's and the janitorial company moved for summary disposition arguing that the "grounds for review are so insubstantial as not to merit further proceedings and consideration by the appellate court." *See* UTAH R. APP. P. 10(a)(2)(A). As we hope the following pages demonstrate, we disagree.

[2] "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 8 n.3, 372 P.3d 629 (citation omitted).

¶5 Shortly after the store opened, Rodriguez arrived at a Smith's grocery store to purchase her breakfast. Rodriguez walked through the front doors and headed for aisle 13. Rodriguez "suddenly and unexpectedly slipped on a puddle of water . . . ." Rodriguez fell, injuring her head, neck, and shoulders.

¶6 Rodriguez sued Smith's, J&I, and Galeno. Before trial, Rodriguez settled with Galeno.[3] Shortly before the case went to the jury, the parties agreed to this jury instruction:

> The parties have stipulated that J&I Maintenance, Inc. was the independent contractor of [Smith's] to, among other things, clean its floors. The parties have also stipulated that [Benigno Galeno] . . . was the independent contractor of J&I Maintenance, Inc. to clean [Smith's] floors. Usually, [Smith's] would not be liable for the negligence of an independent contractor. However, [Smith's] has a nondelegable duty to keep its premises reasonably safe for invitees, and the law imposes liability for physical harm caused by a breach of the nondelegable duty to keep its premises reasonably safe for invitees even though [Smith's] may have contracted with others who performed the work which caused the injury.

---

[3] Neither party addresses the impact that this settlement may have had on the litigation between Rodriguez, Smith's, and J&I. In *M.J. v. Wisan*, 2016 UT 13, 371 P.3d 21, we held that a principal's pass-along liability is governed by the Joint Obligations Act (JOA). *Id.* ¶¶ 33–35. Under the JOA, an "obligee's release or discharge of one or more of several obligors, or of one or more of joint or of joint and several obligors, does not discharge co-obligors against whom the obligee in writing and as part of the same transaction as the release or discharge expressly reserves his rights . . . ." UTAH CODE § 15-4-4. In other words, the JOA requires a claim against a principal to be expressly reserved in order for it to be preserved. In *Wisan*, we explained that this is because "the agent's acts are the only thread connecting the principal to the plaintiff. Once that thread is severed (by a release), there is no longer any basis for the principal's liability (unless it is expressly reserved)." 2016 UT 13, ¶ 38. We acknowledge our examination of vicarious liability under the JOA in *Wisan*, but because neither party raised this issue below or on appeal, we will not explore its potential impact here.

The jury allocated 5 percent of the fault to Smith's, none to J&I, 75 percent to Galeno, and 20 percent to Rodriguez.

¶7 Rodriguez filed a proposed judgment and argued that because Smith's owed a nondelegable duty to keep its store reasonably safe for its customers, the court should enter judgment against Smith's for 80 percent of Rodriguez's damages: 5 percent attributable to the fault allocated to Smith's and 75 percent attributable to the fault allocated to Galeno. Additionally, Rodriguez argued that because J&I and Galeno assumed Smith's nondelegable duty, the court should enter judgment against J&I for 75 percent of Rodriguez's damages, attributable to 75 percent of the fault allocated to Galeno.

¶8 Smith's and J&I opposed Rodriguez's proposed judgment. They argued that such a rejiggering of liability would run afoul of Utah's Liability Reform Act (LRA). Smith's and J&I reasoned that under the LRA, no defendant can be liable to any person seeking recovery for any amount in excess of the proportion of fault attributed to that defendant, and that Rodriguez's proposed judgment would do precisely that. (Citing UTAH CODE § 78B-5-818(3)).

¶9 The district court agreed with Smith's and J&I's reading of the LRA. The court entered judgment against Smith's for 5 percent of Rodriguez's damages. The court also awarded Rodriguez 5 percent of her costs. Rodriguez appeals.

## ISSUES AND STANDARDS OF REVIEW

¶10 Rodriguez raises two issues on appeal. First, Rodriguez contends that the district court erred by declining to enter judgment against Smith's and J&I for the portion of damages Galeno's negligence caused.[4] Rodriguez argues that under the nondelegable duty doctrine, both Smith's and J&I are liable for the 75 percent of

---

[4] We are hindered in our review by an incomplete record. Rodriguez filed a certificate verifying that "no transcript is necessary as the case was decided on briefs after judgment." But the order and its accompanying briefs provide only a glimpse of what occurred below. Transcripts of pre and posttrial hearings, as well as those of the jury trial can be valuable resources to understand the district court's decision. A complete record aids our review bigly and at times our opinion reflects our lack of visibility into what happened below.

the fault allocated to Galeno. "The question of whether a duty exists is a question of law. . . . [R]esolution of this issue begins with an examination of the legal relationships between the parties, followed by an analysis of the duties created by these relationships." *Yazd v. Woodside Homes Corp.*, 2006 UT 47, ¶ 15, 143 P.3d 283 (citation omitted). Smith's and J&I argue that the LRA prevents the court from shifting Galeno's portion of the damages to them. "The application of the LRA in apportioning fault is a legal question of statutory construction, which we review for correctness." *Bishop v. GenTec Inc.*, 2002 UT 36, ¶ 8, 48 P.3d 218.

¶11 Second, Rodriguez contends that the trial court erred when it awarded her only 5 percent of her costs. "A trial court's decision to award the prevailing party its costs is reviewed under an abuse of discretion standard." *Coleman ex rel. Schefski v. Stevens*, 2000 UT 98, ¶ 10, 17 P.3d 1122. However, whether the district court applied the appropriate standard to determine those costs presents a legal question that we review for correctness. *Lyon v. Burton*, 2000 UT 55, ¶ 76, 5 P.3d 616 (holding that when the reasons for the trial court's decisions to award costs involve legal determinations, we review the court's decision for correctness); *cf. Penunuri v. Sundance Partners, Ltd.*, 2017 UT 54, ¶ 15, --- P.3d --- ("[T]he proper standard to apply when determining whether to award deposition costs is a legal question that we review for correctness.").

## ANALYSIS

### I. Vicarious Liability of Smith's and J&I

¶12 Rodriguez contends that the district court erred by entering judgment against Smith's for 5 percent of her damages. Rodriguez argues that under the nondelegable duty doctrine, both Smith's and J&I should also be liable for Galeno's portion of the damages. Smith's and J&I counter that the LRA precludes entry of a judgment exceeding the proportion of fault attributed to a defendant at trial. The questions presented require an examination of the nondelegable duty doctrine and the LRA.

### A. The Nondelegable Duty Doctrine

¶13 Generally, "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." *Magana v. Dave Roth Constr.*, 2009 UT 45, ¶ 22, 215 P.3d 143 (citation omitted). "This general rule recognizes that one who hires an independent contractor and does not participate in or control the manner in which the contractor's work is performed owes no duty of care concerning the safety of the

manner or method of performance implemented." *Id.* (citation omitted).

¶14 The nondelegable duty doctrine provides an exception to this general rule. The owner of a premises has a nondelegable duty to keep her premises reasonably safe for business invitees. *See Dwiggins v. Morgan Jewelers*, 811 P.2d 182, 183 (Utah 1991) ("Owners of land must . . . exercise due care and prudence for the safety of business invitees."). Because the landowner may not relieve herself of the duty, she is liable for an independent contractor's negligence as if it were her own. *Sullivan v. Utah Gas Serv. Co.*, 353 P.2d 465, 466–67 (Utah 1960). As our court of appeals has noted, a "nondelegable duty means that an employer of an independent contractor, by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties negligently performed." *Price v. Smith's Food & Drug Ctrs., Inc.*, 2011 UT App 66, ¶ 26, 252 P.3d 365 (internal quotation marks omitted) (quoting 41 AM. JUR. 2D *Independent Contractors* § 43 (2005)).

¶15 The nondelegable duty doctrine stems from principles of premises liability:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons . . . and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise protect them against it.

RESTATEMENT (SECOND) OF TORTS § 344 (AM. LAW. INST. 1965); *see also Dwiggins*, 811 P.2d at 183 (holding that the duty arising under section 344 exists in Utah). This rule "applies to the acts of independent contractors . . . who are employed or permitted to carry on activities upon the land." RESTATEMENT (SECOND) OF TORTS § 344 cmt. c. "The very essence of the nondelegable duty doctrine . . . is that the property owner is *fully liable* to a plaintiff who has been injured as a result of a breach of a nondelegable duty *regardless* of whether the property owner is actually at fault or the degree of fault." *Smith v. Town of Greenwich*, 899 A.2d 563, 583 (Conn. 2006).

¶16 Smith's and J&I argue that the nondelegable duty doctrine is a form of *respondeat superior* liability, and that Utah's LRA displaced *respondeat superior* liability. Nondelegable duties create a form of

vicarious liability. 41 AM. JUR. 2D *Independent Contractors* § 43 (2d ed. 2018). But the nondelegable duty doctrine is not synonymous with the doctrine of *respondeat superior*. Rather, "[t]he doctrine of nondelegable duty is parallel to that of *respondeat superior* as both are forms of vicarious liability; both have the aim of ensuring that the employer is responsible to innocent third parties for the negligent acts of its agents." *Id.*

¶17 Under the LRA, "[n]o defendant is liable to any person seeking recovery for any amount in excess of the proportion of fault attributed to that defendant under Section 78B-5-819." UTAH CODE § 78B-5-818(3). Smith's and J&I argue that the LRA "assures that one party[] . . . is not liable for the breach of another party's duty." Smith's and J&I also argue that this concept comports with the principles behind the LRA: "basic fairness" and ensuring that "one particular defendant is 'not the guarantor of everyone else's damages.'" (Citation omitted).

¶18 "[T]he LRA applies when liability is based on fault—even if that fault is connected to or arises out of the conduct of another individual." *M.J. v. Wisan*, 2016 UT 13, ¶ 35, 371 P.3d 21. In *Wisan*, we concluded that "[a] *respondeat superior* claim escapes the coverage of the LRA because it does not depend on any showing of 'fault' by the party subject to such liability." *Id.* ¶ 36. "LRA fault is an 'actionable breach of legal duty' or an 'act' or 'omission proximately causing or contributing to injury or damages sustained by a person seeking recovery.'" *Id.* (citation omitted).

¶19 "[*R*]*espondeat superior* liability involves no act, omission, or breach of a duty *by the defendant*. It involves only a relationship (between a principal and an agent) and an act or breach *by a third party* (of an agent within the scope of agency)." *Id.* And, "[t]he only fault that must be established to sustain *respondeat superior* liability is the fault of the primary tortfeasor—the agent. The principal's liability is not based on fault." *Id.* ¶ 37. Rather, *respondeat superior* liability "is pure pass-along liability." *Id.*

¶20 *Wisan*'s logic applies equally to the nondelegable duty doctrine. Similar to the doctrine of *respondeat superior*, the nondelegable duty doctrine "is a form of vicarious liability because it is not based on the personal fault of the landowner . . . ." 41 AM. JUR. 2D *Independent Contractors* § 43. Under the nondelegable duty doctrine, a property owner may be held liable for the negligence of an independent contractor although the owner has exercised reasonable care in all endeavors. *Id.* And similar to *respondeat superior*, liability under the nondelegable duty doctrine "involves no act, omission, or breach of a duty by the defendant." *See Wisan*, 2016

UT 13, ¶ 36 (emphasis omitted). The only fault that must be established to sustain liability under the nondelegable duty doctrine is the fault of the independent contractor. *See id.* ¶ 37. And because liability under the nondelegable duty doctrine is also "pure pass-along liability," a claim under the nondelegable duty doctrine "escapes the coverage of the LRA . . . ." *See id.* ¶¶ 36–37.

¶21 The Connecticut Supreme Court faced a similar issue in *Smith v. Town of Greenwich*. 899 A.2d at 578–84. After a woman slipped and fell on the sidewalk adjacent to a business and sued the property owner, the property owner sought to attribute liability to the independent contractor responsible for snow removal. *Id.* at 567, 579. The independent contractor argued that the nondelegable duty doctrine and the relationship between property owners and independent contractors preclude claims against contractors for breaches of nondelegable duties. *Id.* at 580.

¶22 Like Utah, Connecticut abolished joint and several liability by statute. *Id.* at 582. The Connecticut statute provides:

> In a negligence action to recover damages resulting from personal injury . . . if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable . . . damages . . . .

CONN. GEN. STAT. § 52-572h(c). This provision "replaced the common-law rule of joint and several liability with a system of apportioned liability that holds each defendant liable for only his or her proportionate share of damages." *Smith*, 899 A.2d at 582 (citation omitted). Connecticut law also recognizes the nondelegable duty doctrine. *Id.* at 580. The court explained that it "view[s] the nondelegable duty doctrine as involving a form of vicarious liability, pursuant to which the party with the duty may[ be] vicariously liable for the conduct of its independent contractor . . . ." *Id.* at 581 (omission in original) (citation omitted).

¶23 The court considered whether the Connecticut apportionment statute conflicted with the nondelegable duty doctrine and concluded that although "the apportionment statute was intended to make a defendant's liability to the plaintiff proportionate to the defendant's degree of fault," liability under the nondelegable duty doctrine does not involve apportionment of fault. *Id.* at 583. Rather, under the nondelegable duty doctrine "the property owner is *fully liable* to a plaintiff who has been injured as a

result of a breach of a nondelegable duty *regardless* of whether the property owner actually is at fault or the degree of fault." *Id.* The court held that the apportionment statute "proceeds on the premise that . . . defendants, between or among any of whom liability is apportioned, are at least potentially liable in differing proportions. It does not apply, therefore, to a case of vicarious liability of one defendant for the conduct of another." *Id.* at 582. Although the *Smith* court examined the nondelegable duty doctrine in the context of a claim between a property owner and its independent contractor, we find its reasoning persuasive here.

¶24 Apportioning fault under Utah Code section 78B-5-819 is a separate inquiry from the vicarious liability of one defendant for the conduct of another. And although here the jury apportioned some fault to Smith's, the inquiry of whether or not Smith's is liable for the tortious acts of an independent contractor under a theory of vicarious liability is an inquiry outside the LRA's reach.

¶25 Smith's argues that in *Bishop v. GenTec Inc.*, 2002 UT 36, 48 P.3d 218, we recognized that the LRA preempts the doctrine of the *respondeat superior*.[5] In *Bishop*, we held, in the context of the reallocation of the fault initially assigned to an immune employer, *id.* ¶ 5, that "[a]pplication of the common law doctrine of *respondeat superior* to determine fault allocation *in this case* would undermine the legislature's objectives in enacting the LRA," *id.* ¶ 11 (emphasis added). However, the factual scenario in *Bishop* is distinguishable from the instant case. *Bishop* dealt with an employer-defendant seeking to use *respondeat superior* to tag the deceased employee, via a reallocation of fault, with the portion of the fault that had been allocated to the immune employer.[6] *Id.* ¶¶ 5, 9, 12–13. We rejected

---

[5] It bears noting that although Smith's and J&I do their darndest to distinguish *Wisan*, that case completely forecloses their argument. *See Wisan*, 2016 UT 13, ¶ 36 ("A *respondeat superior* claim escapes the coverage of the LRA because it does not depend on any showing of 'fault' by the party subject to such liability."). Although we could end our analysis with that citation to *Wisan*, we see value in distinguishing *Bishop* to ensure that future application of that case is limited to the factual scenario it presented.

[6] Utah Code section 78B-5-819(2)(a) currently provides:

If the combined percentage or proportion of fault attributed to all persons immune from suit is less than 40%, the trial court shall reduce that percentage or

(continued . . .)

this attempt, and hinted that the peculiarity of the fact pattern dictated the holding. *See id.* ¶ 12. Indeed, we examined the factors that led to the 1994 amendment to the LRA by which the legislature "balanced the factors for and against reallocation of fault and found that reallocation between the plaintiff and the defendant was a better policy than forcing the plaintiff to bear the full burden of the immune party's fault." *Id.* This led us to conclude that "the history of the allocation and reallocation provisions of the LRA reveals a legislative intent to override the operation of *respondeat superior in this situation*." *Id.* (emphasis added).

¶26 Here, of course, we are not faced with the reallocation of the fault assigned to an immune employer. Rather, Rodriguez is a customer arguing that Smith's had a duty to keep its store safe and that it was not permitted to delegate that duty away. In this circumstance, *Bishop*'s reasoning does not apply, but *Wisan*'s does. As we explained in *Wisan,* the LRA can coexist, at least in some circumstances, with the nondelegable duty doctrine. And this is one of those circumstances.

### *B. Smith's Liability*

¶27 Rodriguez argues that because the duty to keep the store safe for customers was nondelegable, the district court erred in failing to enter judgment against Smith's for the damages stemming from Galeno's negligence. Under the principles discussed above, *supra* ¶¶ 13–14, Smith's had a nondelegable duty to keep its premises reasonably safe for customers, and is therefore liable for the creation of an unsafe condition by an independent contractor.[7] *See Sullivan*,

---

proportion of fault to zero and reallocate that percentage or proportion of fault to the other parties . . . for whom there is a factual and legal basis to allocate fault in proportion to the percentage or proportion of fault initially attributed to each by the fact finder.

[7] Smith's appears to argue that because it did not directly hire Galeno, Smith's cannot be liable for his negligence. Smith's does not provide any legal support for this contention. A party that fails to devote adequate attention to an issue is almost certainly going to fail to meet its burden of persuasion. *Bank of Am. v. Adamson*, 2017 UT 2, ¶¶ 12–13, 391 P.3d 196. "A party must cite the legal authority on which its argument is based and then provide reasoned analysis of

(continued . . .)

353 P.2d at 466–67 (holding that the owner of the premises has a nondelegable duty to keep the premises reasonably safe for business invitees and is, therefore, liable for an independent contractor's negligence as if it were its own).

¶28 At trial, the jury allocated 75 percent of the fault to Galeno, the independent contractor J&I hired to perform the overnight cleaning work. "A nondelegable duty means that an employer of an independent contractor, by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties negligently performed." *Price*, 2011 UT App 66, ¶ 26 (internal quotation marks omitted) (quoting 41 AM. JUR. 2D *Independent Contractors* § 43 (2005)). At trial, the parties stipulated that Galeno "was the independent contractor of J&I Maintenance, Inc. to clean Smith's . . . floors." And because Galeno performed his duties negligently, Smith's is liable for the damages arising out of Galeno's negligence in addition to its own. Accordingly, we reverse the district court's judgment. Because Smith's is liable for the portion of the damages arising out of Galeno's negligence, we remand with instructions to enter judgment against Smith's for 80 percent of Rodriguez's damages.

### C. J&I's Liability

¶29 Rodriguez next contends that "[b]ecause J&I stipulated that it contracted with Galeno to perform [the] nondelegable duty of Smith's, it is liable for Galeno's 75% fault." Rodriguez argues that Jury Instruction 19 embodies that stipulation. Rodriguez claims that the instruction "stated that J&I Maintenance had assumed Smith's duty, and that it also would be liable for any fault of Galeno."

¶30 Jury Instruction 19 provides:

> The parties have stipulated that J&I Maintenance, Inc. was the independent contractor of [Smith's] to, among other things, clean its floors. The parties have also stipulated that [Benigno Galeno] . . . was the independent contractor of J&I Maintenance, Inc. to clean [Smith's] floors. Usually, [Smith's] would not be liable for the negligence of an independent contractor. However, [Smith's] has a nondelegable duty to keep its

---

how that authority should apply in the particular case . . . ." *Id.* ¶ 13. Smith's has failed to do so, and has therefore failed to carry its burden of persuasion on appeal.

premises reasonably safe for invitees, and the law imposes liability for physical harm caused by a breach of the nondelegable duty to keep its premises reasonably safe for invitees even though [Smith's] may have contracted with others who performed the work which caused the injury.

Instruction 19 states that J&I was the independent contractor of Smith's to clean its floors. The instruction also states that Smith's had a nondelegable duty to "keep its premises reasonably safe for invitees . . . ."

¶31 Instruction 19 does not recite that J&I assumed Smith's duty, nor does it provide that J&I would be liable for any fault of Galeno. The entirety of Rodriguez's argument rests on the premise that J&I stipulated to an assumption of the nondelegable duty, and therefore agreed to assume Galeno's liability.[8] But Jury Instruction 19 does not evidence any such stipulation.[9] And Rodriguez has not provided an alternative argument in support of her contention that J&I assumed Smith's nondelegable duty.[10] Accordingly, we affirm the judgment of the district court as to J&I's liability.

---

[8] In her reply brief and again at oral argument, Rodriguez argued that J&I may have assumed the nondelegable duty under section 43 of the *Restatement (Third) of Torts: Liability for Physical and Emotional Harm*. Issues not raised in an opening brief are waived. *Allen v. Friel*, 2008 UT 56, ¶¶ 7–8, 194 P.3d 903. And we do not address issues raised for the first time during oral argument. *Porenta v. Porenta*, 2017 UT 78, ¶ 33, 416 P.3d 487. The only theory of liability set forth in Rodriguez's opening brief forwards the argument that J&I stipulated that it had assumed Smith's duty, and that it also would be liable for any fault of Galeno. And as we have stated, Jury Instruction 19 does not provide evidence of that stipulation.

[9] A more complete record might have helped us understand why Rodriguez believed the parties had stipulated to something the jury instruction does not reflect. What was before us on appeal—mainly the jury instruction—does not permit us to conclude that the parties had entered into the stipulation Rodriguez describes.

[10] To the extent that Rodriguez may be arguing that by contracting to clean Smith's floors, J&I agreed to share Smith's nondelegable duty to keep its premises reasonably safe for invitees, Rodriguez has provided no support for this contention. Utah Rule of

(continued . . .)

## II. Allocation of Costs

¶32 Finally, Rodriguez contends that the district court erred in reducing her costs award to an amount representing 5 percent of the taxed costs. Rodriguez argues that "[w]hile the trial court did not elaborate on its decision, it seems evident that the trial court treated taxed costs in the same manner as 'damages' under Utah Code section 78B-5-820."[11]

¶33 The costs our rules contemplate include expenses authorized by statute and certain fees that are paid to the court and witnesses. *Frampton v. Wilson*, 605 P.2d 771, 774 (Utah 1980). "Damages" on the other hand are "the estimated money equivalent for detriment or injury sustained." *Aris Vision Inst., Inc. v. Wasatch Prop. Mgmt., Inc.*, 2006 UT 45, ¶ 16, 143 P.3d 278 (citation omitted); *see also Damages*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Money claimed by, or ordered to be paid to, a person as compensation for loss or injury . . . ."). Further, "[d]amages are based on fault [and] are generally limited only by the findings and conscience of the jury." *Aris Vision Inst.*, 2006 UT 45, ¶ 16 (alterations in original) (citation omitted).

¶34 In other words, costs are distinct from damages. Costs arise out of litigation and are not dependent on fault. Damages, in the context of this dispute, relate to a party's injury and depend on a party's fault for detriment or injury sustained.

¶35 This distinction becomes important because Utah Code section 78B-5-820(1) provides that "the maximum amount for which

---

Appellate Procedure 24(a)(8) requires an appellant's brief to "explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." An issue is inadequately briefed if "the argument 'merely contains bald citations to authority [without] development of that authority and reasoned analysis based on that authority.'" *Adamson*, 2017 UT 2, ¶ 11 (alteration in original) (citation omitted). "[A]n appellant who fails to adequately brief an issue 'will almost certainly fail to carry its burden of persuasion on appeal.'" *Id.* ¶ 12 (citation omitted). Rodriguez does not cite to the record to support her contention, nor does she cite to any legal authority. Rodriguez's briefing cannot meet her burden of persuasion on this issue. *See id.*

[11] This is another one of those instances where a better record would have been handy.

a defendant may be liable to any person seeking recovery is that percentage or proportion of the *damages* equivalent to the percentage or proportion of fault attributed to that defendant." (Emphasis added). By its plain language, this provision does not require the court to award *costs* to a prevailing party in proportion equivalent to the percentage or proportion of fault attributed to the defendant.

¶36 It appears from the district court's award of 5 percent of Rodriguez's costs that the district court believed that it needed to allocate costs in accordance with the jury's allocation of fault. Although the LRA does not dictate the manner in which a court divvies up costs, a district court may, in the exercise of its discretion, allocate costs in parallel with the jury's allocation of fault. But it is not required to do so. Because we remand so the district court can adjust its award with respect to Smith's, and because that adjustment could impact the district court's cost allocation, we vacate the award of costs to permit the court to revisit the question. And we do so with the reminder that the LRA does not dictate the answer to that question.

## CONCLUSION

¶37 Smith's had a nondelegable duty to keep its premises reasonably safe for invitees. A jury concluded that Galeno's negligence created an unreasonably unsafe condition when he left a puddle of water at the end of aisle 13. Because Smith's cannot delegate its duty to keep its premises safe, it is liable for the damages arising from Galeno's negligence. Accordingly, the district court erred in entering judgment against Smith's for 5 percent of Rodriguez's damages. We remand with instructions to enter judgment against Smith's for 80 percent of Rodriguez's damages to account for Smith's own negligence and the negligence of Galeno. Because Jury Instruction 19 does not provide evidence of a stipulation that J&I assumed the nondelegable duty, and because Rodriguez develops no other argument on this point, we conclude that the district court correctly entered judgment in favor of J&I. We clarify that costs and damages are not the same thing, and accordingly, costs need not be allocated in proportion to a party's degree of fault under the LRA. We remand for a redetermination of Rodriguez's costs in light of this clarification. J&I requests an award of costs pursuant to Utah Rule of Appellate Procedure 34. Because J&I prevailed on appeal, we grant its request and award costs. *See* UTAH R. APP. P. 34(a). We deny Smith's similar request.