*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 32**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

D.W., L.T., and J.G.,
*Appellees*,

*v.*

FPA SANDY MALL ASSOCIATES,
*Appellant*.

No. 20230196
Heard February 7, 2024
Filed August 8, 2024

On Appeal of Interlocutory Order

Third District, Salt Lake County
The Honorable Randall N. Skanchy
No. 220902143

Attorneys:

Michael W. Young, Andres Morelli, Salt Lake City, for appellees

Vincent J. Velardo, Salt Lake City, for appellant

JUSTICE POHLMAN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE PETERSEN, and JUSTICE HAGEN joined.

JUSTICE POHLMAN, opinion of the Court:

## INTRODUCTION

¶1  In this interlocutory appeal, FPA Sandy Mall Associates (SMA) challenges the district court's order denying its motion to dismiss a complaint asserting claims against it for premises liability and negligence. SMA owns a shopping center in which it allowed Hong Guang Lin, an unlicensed massage therapist, to offer massage therapy services to the public. Three customers—D.W., L.T., and J.G. (collectively, Plaintiffs)—filed suit against SMA and

Lin after Lin allegedly sexually assaulted them during their massage appointments.

¶2 SMA moved to dismiss the claims against it for failure to state a claim upon which relief could be granted, arguing that because it had no legal duty to Plaintiffs, their claims against it necessarily failed. In response, Plaintiffs presented the district court with several iterations of the duty of care they were invoking. Additionally, at the district court's behest, both sides addressed *B.R. ex rel. Jeffs v. West*, 2012 UT 11, 275 P.3d 228, and applied its five-factor analytical framework (*Jeffs* factors) for recognizing a categorical duty of care.

¶3 The district court denied SMA's motion, concluding "as a matter of law that SMA, as a landlord, owed a duty to Plaintiffs, as invitees." The court explained that premises owners have a "duty to keep [their] premises safe for others" and that a "landlord has a duty to exercise reasonable care to ensure that the property was in a reasonably safe condition." The court also assessed the *Jeffs* factors and concluded that they favored recognizing those duties in this case. And in discussing those factors, the court observed that "an unlicensed business . . . could foreseeably result in physical harm to a business invitee."

¶4 We granted SMA's petition for interlocutory appeal on two questions. First, SMA contends the district court erred in concluding that SMA, as a commercial landlord, has a duty to verify its tenant's licensure status. Second, SMA contends that the court erred in concluding it was foreseeable that an unlicensed tenant operating a massage business could harm the public. We don't reach the first question, and we agree, in part, on the second.

¶5 We don't reach the question of whether a commercial landlord has a duty to verify its tenant's licensure status, because the district court did not recognize a duty as framed and challenged by SMA. And, as for the foreseeability question, we strike the court's *Jeffs*-based observations, including its observation on foreseeability. The *Jeffs* framework applies only when a party relies on a duty not previously recognized under Utah law. Because Plaintiffs had not advocated for the adoption of a new categorical duty in response to SMA's motion to dismiss, it was unnecessary for the district court to conduct a *Jeffs* analysis and to opine on its factors.

## BACKGROUND[1]

¶6 In 2016, Hong Guang Lin opened Foot Relax Center on property owned by SMA in the Sandy Village Shopping Center. Although Lin lacked the training and licensing to provide massage therapy services in Utah, he began working as a massage therapist at the center.

¶7 In 2020, Plaintiffs each had an appointment with Lin for a foot massage, during which Lin sexually assaulted them. Together, Plaintiffs brought civil claims against SMA and Lin for damages arising from the assaults. As relevant here, Plaintiffs sued SMA under theories of premises liability and negligence. They allege that SMA retained control over the property on which Foot Relax Center was located and that SMA "was responsible for the safety of patrons as invitees during the period in which Lin carried out his sexual assaults on Plaintiffs."

¶8 More specifically, the premises liability claim alleges that SMA "owed a duty to invitees to act reasonably with regard to the safety of invitees, to discover whether any third party was committing or was likely to commit harmful acts against invitees, and to give warnings adequate to enable invitees to avoid such acts or otherwise to protect invitees from the consequences of such acts." As for the negligence claim, Plaintiffs assert that SMA "owed a duty to Plaintiffs to use reasonable care in [its] dealings with patrons and invitees of the property."

¶9 SMA moved to dismiss Plaintiffs' claims against it under rule 12(b)(6) of the Utah Rules of Civil Procedure. SMA argued that because it had turned over possession of the property to Lin in 2016, and because a landlord is not responsible for its tenant's torts, it was not liable for Lin's torts committed four years later. According to SMA, its "duty to business invitees of Mr. Lin's leased property ended upon transfer of the property," and it was entitled to be dismissed from the lawsuit because it "owed no independent duty to Plaintiffs."

¶10 In opposing the motion to dismiss, Plaintiffs countered that SMA "had a duty to verify the licensure of Mr. Lin to perform massages when he signed the lease of the property" given that it

---

[1] Because this case is before us on appeal of the denial of a motion to dismiss, we take the factual allegations in the complaint as true. *Mower v. Baird*, 2018 UT 29, ¶ 5, 422 P.3d 837.

"is foreseeable that an unlicensed, untrained massage therapist—performing massages on the general public—endangers the safety of the patrons." According to Plaintiffs, SMA's failure to verify Lin's licensure amounted to a breach of its duty to discover and remedy unsafe conditions and to ensure the premises were reasonably safe. In support, Plaintiffs relied on several Utah cases discussing premises liability. For example, they cited *Rodriguez v. Kroger Co.*, 2018 UT 25, ¶¶ 14–15, 422 P.3d 815, which quotes section 344 of the Restatement (Second) of Torts. They also cited *Darrington v. Wade*, 812 P.2d 452, 458–59 (Utah Ct. App. 1991), which applied section 17.2 of the Restatement (Second) of Property.

¶11 The district court held a hearing on the motion, during which it asked the parties to address the potential applicability of *B.R. ex rel. Jeffs v. West*, 2012 UT 11, 275 P.3d 228. The court instructed the parties to review *Jeffs* and then simultaneously submit a few pages indicating "whether or not [*Jeffs*] is the operative body of law." But the court cautioned, "*Jeffs* may be entirely inapplicable in this case."

¶12 Both sides complied with the request. In Plaintiffs' supplemental filing, they stated that *Jeffs* "is indeed informative and controlling regarding the duty SMA owed to third parties/invitees as a landlord and property owner." Plaintiffs then applied the five *Jeffs* factors and argued that they weigh in favor of recognizing established duties of care between landowners and invitees. SMA, in turn, used the *Jeffs* factors to analyze "the issues and facts" of this case. SMA applied each factor to Plaintiffs' claims and argued that all five factors favored SMA.

¶13 The district court concluded "as a matter of law that SMA, as a landlord, owed a duty to Plaintiffs, as invitees." It cited *Rodriguez* for the proposition that premises owners have a "duty to keep [their] premises safe for others," and it stated that "a landlord has a duty to exercise reasonable care to ensure that the property was in a reasonably safe condition." The court also assessed the *Jeffs* factors and determined that they "militate against granting SMA's Motion to Dismiss."

¶14 SMA sought permission from this court to appeal the district court's interlocutory order denying SMA's motion to dismiss. SMA asserted that it was important for this court to resolve whether landlords "must verify professional licensing or be subject to liability for torts of their tenants." Plaintiffs opposed interlocutory review, arguing that the case was just about "the

conclusion that SMA, as a landlord, owed a duty of care to Plaintiffs, as invitees—applying routine and well-settled Utah law." We granted SMA's petition for interlocutory review and retained the case.

## ISSUES AND STANDARD OF REVIEW

¶15 SMA challenges the district court's denial of its motion to dismiss, identifying two issues for review:

- Whether the district court erred in determining that SMA, as a landlord, had a duty to verify the professional licensure of its tenant; and

- Whether the district court erred in determining that it was foreseeable that a tenant who was operating a massage establishment without a massage therapy license would cause harm to members of the public.

"[W]e review the district court's denial of a motion to dismiss for correctness, granting no deference to the district court's ruling." *St. Jeor v. Kerr Corp.*, 2015 UT 49, ¶ 6, 353 P.3d 137 (cleaned up).

## ANALYSIS

### I. SMA INCORRECTLY FRAMES THE DISTRICT COURT'S DUTY DECISION

¶16 SMA contends that the district court erred in denying SMA's motion to dismiss on the basis that it, as a commercial landlord, had "a duty to verify [the] professional licensure" of its tenant, Lin. In response, Plaintiffs counter that the court's ruling on the duty question was not what SMA describes. Plaintiffs explain that the district court denied SMA's motion "because under Utah law SMA owed a categorical duty of care to third parties/invitees (including Plaintiffs) as a commercial landlord and property owner." Plaintiffs argue that in framing the issue for our review, SMA improperly conflates issues of breach and proximate cause with the issue of duty.[2]

¶17 We conclude that Plaintiffs are correct that the first issue SMA presents is not properly before us. SMA petitioned for interlocutory review of the district court's denial of its motion to

---

[2] To succeed on a negligence claim, a plaintiff must prove that "(1) defendant owed plaintiff a duty of care, (2) defendant breached that duty, and that (3) the breach was the proximate cause of (4) plaintiff's injuries or damages." *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 5 n.2, 275 P.3d 228.

dismiss, arguing that the court erred in concluding that "SMA, as a landlord, had a duty to verify whether the tenant had a professional license." We granted SMA's petition based on its framing of the court's ruling, and SMA maintains that framing now. But the district court did not recognize the duty SMA claims it did. That is, the court did not conclude that commercial landlords owe invitees a categorical duty to verify the licensure of the landlord's tenants.

¶18 Instead, the district court concluded that SMA, as a landlord, owed duties to Plaintiffs, as invitees, "to keep [its] premises safe for others" and "to exercise reasonable care to ensure that the property was in a reasonably safe condition." These duties appear to be rooted in section 344 of the Restatement (Second) of Torts and section 17.2 of the Restatement (Second) of Property. Section 344 states:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons . . . , and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

RESTATEMENT (SECOND) OF TORTS § 344 (AM. L. INST. 1965).[3] And section 17.2 states,

> A landlord who leases property for a purpose involving the admission of the public is subject to liability for physical harm caused to persons who enter the leased property for that purpose by a condition of the leased property existing when the tenant takes possession, if the landlord: (1) knows or by the exercise of reasonable care could discover that

---

[3] This duty *appears* to be rooted in section 344 because the district court did not expressly refer to section 344. Instead, in support of its conclusion that an owner of a premises has a duty to keep its premises safe for others, the court cited our decision in *Rodriguez v. Kroger Co.*, 2018 UT 25, 422 P.3d 815. The *Rodriguez* court, in turn, cited section 344 of the Restatement (Second) of Torts. *Id.* ¶ 15.

the condition involves an unreasonable risk of harm
to those persons; (2) has reason to expect that the
tenant will admit them before the leased property is
put in safe condition for their reception; and (3) fails
to exercise reasonable care to discover or to remedy
the condition, or otherwise to protect those persons
against it.

RESTATEMENT (SECOND) OF PROPERTY: LANDLORD AND TENANT § 17.2
(AM. L. INST. 1977).[4] These are established duties under Utah law,
not a new categorical duty to verify a tenant's licensure status. *See
Dwiggins v. Morgan Jewelers*, 811 P.2d 182, 183 (Utah 1991) (citing
Restatement (Second) of Torts section 344 in recognition of a duty
"to protect . . . customers from criminal acts by third parties"); *see
also Rodriguez v. Kroger Co.*, 2018 UT 25, ¶ 15, 422 P.3d 815 (citing
section 344); *Darrington v. Wade*, 812 P.2d 452, 458 (Utah Ct. App.
1991) (applying Restatement (Second) of Property section 17.2).

¶19  But SMA did not seek permission to appeal the district
court's actual ruling, nor does it argue that the court erred in
concluding that SMA owed Plaintiffs a duty "to keep [its] premises
safe for others" or "to exercise reasonable care to ensure that the
property was in a reasonably safe condition." Thus, the correctness
of the court's ruling that SMA owed Plaintiffs these duties is not
properly before us, and we express no opinion on whether the
allegations in Plaintiffs' complaint implicate the duties of care
identified by the district court. Likewise, we express no opinion on
whether commercial landlords owe a categorical duty to invitees to
verify their tenants' professional licensure, because the district
court recognized no such duty. And because we do not reach these
questions, we leave the court's order undisturbed on the question
of duty.

## II. THE DISTRICT COURT ERRED IN APPLYING *JEFFS* AND REACHING QUESTIONS OF FORESEEABILITY

¶20 SMA also contends that the district court erred in
determining that it was foreseeable that a tenant who was

---

[4] This duty *appears* to be rooted in section 17.2 because even
though the district court did not expressly refer to it, Plaintiffs'
opposition memorandum invoked section 17.2 and referenced
similar articulations of that duty in Utah caselaw. Although this
court has not adopted section 17.2, our court of appeals has. *See
Darrington v. Wade*, 812 P.2d 452, 458 (Utah Ct. App. 1991).

operating a massage establishment without a massage therapy license would cause harm to members of the public. Specifically, SMA argues that the court erred when, in deciding the motion to dismiss, it "applied the incorrect foreseeability analysis to the alleged facts." The court opined on the issue of foreseeability as part of its analysis of the *Jeffs* factors. *See B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 5, 275 P.3d 228. Because the district court erred in applying the *Jeffs* factors to resolve SMA's motion to dismiss, we strike the portions of its decision applying those factors, including its observations on foreseeability.

¶21   The present case illuminates some confusion surrounding *Jeffs*'s utility. Indeed, the district court wondered whether *Jeffs* was "the operative body of law that [it] should be looking at," while also expressing concern that "*Jeffs* may be entirely inapplicable in this case." We take this opportunity to clarify for litigants and the courts that a *Jeffs* analysis is necessary only when a party seeks to establish a previously unrecognized duty for a category of cases.

¶22   In *Jeffs*, we articulated "a framework for the establishment of a duty of care in the law of torts." *Nixon v. Clay*, 2019 UT 32, ¶ 13, 449 P.3d 11; *see also Mower v. Baird*, 2018 UT 29, ¶ 4, 422 P.3d 837 (stating that *Jeffs* established "the framework for analyzing whether a traditional duty exists"). That framework consists of five factors relevant to determining, on a categorical basis, whether a defendant owes a duty to a plaintiff. *See Jeffs,* 2012 UT 11, ¶¶ 5, 23. Those factors are: "(1) whether the defendant's allegedly tortious conduct consists of an affirmative act or merely an omission; (2) the legal relationship of the parties; (3) the foreseeability or likelihood of injury; (4) public policy as to which party can best bear the loss occasioned by the injury; and (5) other general policy considerations."[5] *Id.* ¶ 5 (cleaned up).

¶23   We have previously emphasized that these factors are to "be analyzed at a broad, categorical level for a class of defendants rather than a factually intense inquiry decided on a case-by-case basis." *Scott v. Universal Sales, Inc.*, 2015 UT 64, ¶ 29, 356 P.3d 1172 (cleaned up). We now emphasize that *Jeffs* and its progeny apply to

---

[5] We originally described these factors as either "plus" or "minus" factors. *Jeffs*, 2012 UT 11, ¶ 5 (cleaned up). We have since discarded that distinction and have emphasized that the factors will play different roles depending on the case. *See Boynton v. Kennecott Utah Copper, LLC*, 2021 UT 67, ¶ 20, 500 P.3d 847.

help courts determine whether a previously unrecognized duty exists; the *Jeffs* framework does not apply when a plaintiff invokes a categorical duty already recognized under Utah law. *See Boynton v. Kennecott Utah Copper, LLC*, 2021 UT 67, ¶ 18, 500 P.3d 847 (explaining that the *Jeffs* factors are relevant to the determination of whether to "creat[e] a legal duty"); *Nixon*, 2019 UT 32, ¶ 13 (explaining that the *Jeffs* factors provide a framework "for the *establishment* of a duty of care" (emphasis added)). In other words, we agree with our court of appeals' explanation that when Utah appellate courts "have already held" that the duty invoked by the plaintiff exists, "the existence of the duty in question has already been established," and a district court therefore need not engage "in a *Jeffs* analysis at all." *Davis v. Wal-Mart Stores Inc.*, 2022 UT App 87, ¶ 15, 514 P.3d 1209.

¶24 Here, the district court—unsure whether the *Jeffs* framework applied—asked the parties to weigh in on the question. But the *Jeffs* analysis was unnecessary and unhelpful because Plaintiffs had invoked categorical duties already recognized under Utah law. That is, because Plaintiffs cited Utah law recognizing duties under section 344 of the Restatement (Second) of Torts and section 17.2 of the Restatement (Second) of Property, *see supra* ¶ 10, Plaintiffs were not asking the court to recognize a new categorical duty in this case.[6]

¶25 Thus, the court's analysis should have been limited to considering whether SMA owed Plaintiffs the already recognized duties they identified and whether the case, based on the allegations in Plaintiffs' complaint, fell "within the ambit of the duty of care." *See Boynton*, 2021 UT 67, ¶ 24 (explaining that, after the court determines a duty of care exists for a category of cases, the court next decides whether the case at hand "falls within the ambit of [that] duty of care"). Because the court's analysis of the *Jeffs* factors was unnecessary, we strike its observations based on those factors, including its case-specific observation that a jury could conclude that an unlicensed "massage therapy establishment . . . could foreseeably result in physical harm to a business invitee."

---

[6] To the extent a plaintiff seeks to impose a previously unrecognized duty, that plaintiff must advocate for it under *Jeffs* and propose an articulation of the duty "in relatively clear, categorical, bright-line rules of law applicable to a general class of cases." *Scott*, 2015 UT 64, ¶ 31 (cleaned up).

We emphasize that we strike these observations without prejudice and without expressing any view on their merits.[7]

## CONCLUSION

¶26 In this interlocutory appeal, SMA first challenges the district court's determination that SMA, as a landlord, had a duty to verify the professional licensure of its tenant. We do not reach that issue because the court did not recognize this duty as framed by SMA. We likewise express no opinion on the correctness of the court's conclusion that SMA owed Plaintiffs duties to keep its premises safe and to exercise reasonable care to ensure its property was in a reasonably safe condition. SMA did not receive permission to appeal this interlocutory ruling, and it has not challenged it on appeal. Thus, we leave the court's ruling on the duty question undisturbed.

¶27  SMA also challenges the district court's determination, as part of its analysis of the *Jeffs* factors, that it was foreseeable that a tenant operating a massage establishment without proper licensing would cause harm to the public. We strike the court's analysis of the *Jeffs* factors, including its observations on foreseeability, because it was unnecessary for the court to apply the *Jeffs* framework to resolve SMA's motion to dismiss. In so doing, we clarify that the *Jeffs* framework applies when litigants seek recognition of a new categorical tort duty and not when, as here, Plaintiffs rely on duties previously recognized under Utah law.

¶28 We remand this case to the district court for further proceedings consistent with these instructions.

––––––––––––

[7] The district court issued a memorandum decision and an order prepared by counsel, both covering the same substantive ground. In the court's memorandum decision, we strike the four paragraphs of analysis on record pages 80–81 applying the *Jeffs* factors. In the court's order, we strike the four paragraphs on record pages 175–76 doing the same.