**2025 UT App 29**

# THE UTAH COURT OF APPEALS

ESTATE OF JOSLYN NICOLE SPILSBURY SCHOFIELD
AND BRAD SCHOFIELD,
Appellants,
*v.*
STARBUCKS CORPORATION,
Appellee.

Opinion
No. 20230875-CA
Filed March 6, 2025

Third District Court, Salt Lake Department
The Honorable Royal I. Hansen
No. 200903485

Ronald J. Park, Kenneth R. Friedman,
David P. Roosa, and S. Brook Millard,
Attorneys for Appellants

Heather L. Thuet, Attorney for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN D. TENNEY
concurred.

HARRIS, Judge:

¶1     One summer morning, Joslyn Nicole Spilsbury Schofield (Joslyn) was sitting at a table in the outdoor seating area at a Starbucks coffee shop when a runaway pickup truck crashed into the seating area, striking her and causing fatal injuries. Her estate and heir (collectively, the Schofields) sued Starbucks Corporation, stating claims for negligence, premises liability, and wrongful death, and generally asserting that Starbucks had not exercised reasonable care to protect patrons like Joslyn from, or warn them against, events like this. On Starbucks' motion, the district court dismissed the Schofields' complaint for failure to state a claim,

and in addition it refused to allow the Schofields the opportunity to amend their complaint. It concluded that Starbucks had no duty to Joslyn to protect her from events like this, and it determined that any amendment to the complaint would be futile.

¶2 The Schofields appeal those rulings, asserting that the district court erred when it determined, as a matter of law, that Starbucks owed no duty to Joslyn, and that the court abused its discretion when it refused to allow them to amend their complaint. We agree with the Schofields on the duty issue and conclude that the district court erred by dismissing their initial complaint, a conclusion that renders unnecessary any discussion of the court's ruling denying the motion to amend. We therefore reverse the court's order dismissing the case, and we remand the case to the district court for further proceedings.

BACKGROUND[1]

¶3 The Starbucks location that Joslyn visited was located in a strip mall adjacent to Highland Drive in Millcreek, Utah. The storefront was oriented facing south, and it was located at the far eastern end of the strip mall, nearest to Highland Drive, a busy north-south arterial street with two lanes of traffic in each direction and a dual-purpose left-turn lane separating the travel lanes. This Starbucks location, like many others, had an outdoor seating area; in this particular location, this seating area (the Seating Area) was on a covered sidewalk directly outside of the storefront, adjacent to the parking lot and close to Highland Drive. The Seating Area was not enclosed by a railing or fence,

---

1. "Our recitation of the facts underlying [the Schofields'] lawsuit is based on the allegations in their complaint. Because this appeal involves [Starbucks'] motion to dismiss [the Schofields'] claims, we must assume all the factual allegations in the complaint are true and determine whether the claims fail as a matter of law." *Doe H.P. v. Broadbent*, 2024 UT 31, n.1, 554 P.3d 1058 (cleaned up).

and no protective barriers existed between the Seating Area and either Highland Drive or the parking lot.

¶4 At the same time that Joslyn was seated in the Seating Area, a driver (Driver) of a large pickup truck—a 2016 Dodge Ram 1500—was apparently having some sort of medical episode.[2] Driver's truck began acting erratically while it was traveling through a parking lot located across Highland Drive from Starbucks; as the episode went on, Driver's truck barreled over a curb and a landscaped parking strip, into and through another parking lot, across all five lanes of Highland Drive, and into the strip mall, where it crashed with considerable force—moving at 29 miles per hour—right into the Seating Area where Joslyn was sitting. The truck caused extensive damage to the pillars supporting the covered sidewalk, and it ended up on its side in the parking lot in front of Starbucks. The truck hit Joslyn directly, causing her to suffer "severe head trauma, multiple fractures, internal bleeding, and ultimately death."

¶5 Nearly two years later, the Schofields filed suit against not only Starbucks but also Driver and several other entities.[3] Against Starbucks, the Schofields asserted claims for negligence, premises liability, and wrongful death. As the basis for these claims, the Schofields invoked the business-invitee duty of reasonable care, alleging that Joslyn was a patron of Starbucks the day she was injured, that Starbucks possessed the "premises on which the [Seating Area] was located," and that Starbucks held the Seating

---

2. The exact nature of the episode Driver sustained is not clear from the record submitted to us. However, both sides appear to agree that Driver experienced some sort of impairing medical episode; as we understand it, the exact nature or medical cause of the episode is not germane to the issues presented in this appeal.

3. The Schofields' claims against all other defendants have been resolved in some fashion and are not at issue in this appeal.

Area open to the public for "purposes connected to [its] business[]." And the Schofields alleged that Starbucks had breached its duty by "fail[ing] to exercise reasonable care to protect Joslyn . . . from the dangerous [Seating Area] or to warn [her] of the danger." In particular, the Schofields alleged that, "[f]or years, the [Seating Area] was maintained in an unsafe and dangerous manner, which created a substantially hazardous condition and foreseeable risk of injury to patrons." The Schofields specifically pointed out that "[n]o protective barriers existed" between the Seating Area and Highland Drive, and that without such a barrier "a vehicle could drive unimpeded into the [Seating Area] from Highland Drive or the adjacent parking lot." The Schofields further alleged that, prior to this incident, "other drivers had collided into [other] Starbucks buildings, injuring and killing [other] Starbucks patrons." And they asserted that Starbucks' breach of its duty was the "direct and proximate cause" of Joslyn's death.

¶6      In response to the Schofields' complaint, Starbucks filed a motion to dismiss, arguing that it had "no duty to protect against the unforeseeable actions of third parties" and that Schofield did "not allege any prior incidents of rogue vehicles striking patrons at this Starbucks" location. In particular, Starbucks argued that it was unforeseeable that "a driver in the parking lot across a five-lane road will experience [a medical] episode, fail to use reasonable care, drive his vehicle perpendicular to the direction of traffic across five lanes, jump three curbs, pass over a sidewalk and strike patrons in the [Seating Area] in the front of its store going 29 miles per hour." Alternatively, Starbucks argued that the court should dismiss the case because Starbucks' "alleged failure to act is not the proximate cause of [Joslyn's] injuries" and that the Schofields "cannot demonstrate that a different [Seating Area] design would have made any difference in this case."

¶7      After full briefing and oral argument, the district court made an oral ruling—later memorialized in a written order—

granting Starbucks' motion to dismiss due to the "lack of duty" owed by Starbucks to Joslyn. The court—quoting *Dwiggins v. Morgan Jewelers*, 811 P.2d 182, 183 (Utah 1991)—stated that a "possessor [of land] 'is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or about to occur.'" And the court offered its view that the Schofields "have failed to allege that any accident has ever occurred on the subject property." But the court determined that proximate cause issues did not constitute an alternative independent basis for dismissal at this procedural stage, observing that "breach and proximate cause are questions . . . which the fact finder determines on a fact specific basis."

¶8 The day after the court's oral ruling, the Schofields filed a motion asking for leave to amend their complaint. In their proposed amended complaint, the Schofields included allegations of over seventy specific incidents in which vehicles had crashed into other Starbucks stores. The proposed amendments also included a letter that was allegedly sent to Starbucks—by a company interested in placing barriers in front of businesses— offering to assist Starbucks in "combat[ing] the costly problem of vehicle crashes into retail storefronts." All these allegations, the Schofields argued, established that "Starbucks had a duty to protect customers at its outdoor seating areas because [it] had actual and constructive notice" that vehicle crashes into such areas "are neither rare nor isolated events." Starbucks opposed the Schofields' motion to amend, asserting that the motion was untimely, prejudicial, and futile.

¶9 After full briefing, the district court denied the Schofields' motion to amend on three grounds. First, the court viewed the motion as untimely because it had been filed after the court's oral ruling granting Starbucks' motion to dismiss. Second, the court noted that the proposed amendment included information that had been available to the Schofields at the time the original complaint was filed, yet they "made no attempt" to amend their

pleadings for approximately six months while Starbucks' motion to dismiss was pending. The court concluded that "such practice constitutes unreasonable neglect in terms of pleading preparation." Finally, the court concluded that the amendment would be futile in any event because the proposed amended complaint did not "include any information regarding car crashes at the property at issue in the present case."

¶10 Some time later, after the Schofields' claims against the other defendants had been resolved, the court entered final judgment in Starbucks' favor on the Schofields' claims.

## ISSUES AND STANDARDS OF REVIEW

¶11 The Schofields now appeal, and they ask us to consider two issues. First, they challenge the district court's order granting Starbucks' motion to dismiss their claims. We review a decision granting a motion to dismiss "for correctness, granting no deference to the decision of the district court." *Scott v. Universal Sales, Inc.*, 2015 UT 64, ¶ 13, 356 P.3d 1172 (cleaned up); *see also Boynton v. Kennecott Utah Copper, LLC*, 2021 UT 67, ¶ 17, 500 P.3d 847 ("The determination of whether a legal duty exists is a purely legal question." (cleaned up)). In this context, "a reviewing court is obliged to construe the complaint in a light most favorable to the plaintiff and to indulge all reasonable inferences in its favor." *Tuttle v. Olds*, 2007 UT App 10, ¶ 14, 155 P.3d 893 (cleaned up). And "dismissal for failure to state a claim is proper only where it is certain that the plaintiff cannot prevail under any potential set of facts." *Zubiate v. American Family Ins. Co.*, 2022 UT App 144, ¶ 13, 524 P.3d 148.

¶12 Second, the Schofields challenge the district court's order denying their motion for leave to file an amended complaint. But our decision reversing the district court's dismissal order obviates the need for us to consider the merits of the Schofields' challenge to the court's denial of their motion to amend.

ANALYSIS

I. Motion to Dismiss

¶13 We first address whether the district court erred by dismissing the Schofields' complaint for failure to state a claim. Our analysis of this issue contains two sections. The first concerns duty, and in this section we address the Schofields' argument that the district court erred by concluding, as a matter of law, that Starbucks owed Joslyn no duty. For the reasons discussed, we agree with the Schofields that the court's duty ruling was erroneous. That conclusion compels us to address, in the second section, Starbucks' invitation for us to affirm the district court's dismissal order on an alternative basis, namely, that the Schofields cannot demonstrate proximate cause as a matter of law. For the reasons discussed, we decline Starbucks' invitation, at this procedural stage, to affirm the dismissal order on this alternative ground.

A.     Duty

¶14 To succeed on a negligence claim, a plaintiff must show "(1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages." *Hunsaker v. State*, 870 P.2d 893, 897 (Utah 1993). The last three elements of a negligence claim—breach, proximate cause, and damages—present questions of fact that typically require the attention of a factfinder; as discussed more fully below, only in clear cases may such issues be decided as a matter of law on summary judgment. *See Reath v. Brian Head Town*, 2024 UT App 194, ¶ 12 ("[T]he questions of breach and causation are questions of fact that should ordinarily be left to the jury."); *Judd v. Drezga*, 2004 UT 91, ¶ 34, 103 P.3d 135 (stating that "damages are a question of fact" that is "distinctly within the jury's province"). But the first element—whether a duty exists—presents a question of law, which may be (and often

is, in appropriate cases) decided at an earlier procedural stage of the litigation, such as via summary judgment or even at the motion-to-dismiss stage. *See B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 23, 275 P.3d 228 (stating that "[d]uty must be determined as a matter of law"); *see also Davis v. Wal-Mart Stores Inc.*, 2022 UT App 87, ¶ 18, 514 P.3d 1209 ("Whether a duty exists is a question of law that we review for correctness." (cleaned up)).

¶15 As we discuss later in this opinion, historic Utah appellate caselaw has not always been entirely clear about where duty questions end and breach questions begin. But more recently, our supreme court has made clear that the main conceptual difference between duty and breach is that "duty is a question of law determined on a categorical basis" regarding an entire class of cases, "while breach and proximate cause are questions for the fact finder determined on a case-specific basis." *Jeffs*, 2012 UT 11, ¶ 25; *see also id.* ¶ 23 ("Duty determinations should be articulated in relatively clear, categorical, bright-line rules of law applicable to a general class of cases." (cleaned up)). Accordingly, we have explained that "case-specific analyses are unwarranted at the duty stage of the negligence inquiry." *Davis*, 2022 UT App 87, ¶ 18. Indeed, "a court should not engage in a fact-intensive analysis regarding the question of duty" because "fact-intensive analyses are instead generally conducted at the breach or proximate cause stages." *Id.* ¶ 25.

¶16 The complexity of a court's categorical-level duty analysis depends, in large part, on whether the plaintiff is invoking a duty that has already been recognized and established under Utah law. If the plaintiff is invoking such a duty, then "the existence of the duty in question has already been established, and a district court therefore need not engage" in any further analysis to determine whether a duty exists. *See D.W. v. FPA Sandy Mall Assocs.*, 2024 UT 32, ¶¶ 23, 27, 554 P.3d 1052 (cleaned up); *accord Davis*, 2022 UT App 87, ¶ 15. In such cases, at least at the motion-to-dismiss stage, a court must simply decide "whether the case, based on the

allegations in [the plaintiff's] complaint," falls "within the ambit of" the established duty that is being invoked. *FPA Sandy Mall Assocs.*, 2024 UT 32, ¶¶ 23, 25 (cleaned up).

¶17    In contrast, when a plaintiff invokes a duty that has not already been recognized in Utah, a court must engage in the five-factor analysis set forth in *Jeffs* to determine whether recognition of a new categorical-level duty is appropriate. *See FPA Sandy Mall Assocs.*, 2024 UT 32, ¶¶ 21, 23–25 ("[A] *Jeffs* analysis is necessary only when a party seeks to establish a previously unrecognized duty for a category of cases."). In *Jeffs*, for instance, the plaintiff was suing a doctor, but the plaintiff was not the doctor's patient; the court was thus asked to determine "whether a physician owes *nonpatients* a duty to exercise reasonable care in the affirmative act of prescribing medications that pose a risk of injury to third parties," a duty that had not previously been recognized under Utah law. 2012 UT 11, ¶ 1 (emphasis added).

¶18    In this case, the Schofields invoke a duty that has long been recognized and established under Utah law: the duty of reasonable care that all business owners owe to their invitees. *See FPA Sandy Mall Assocs.*, 2024 UT 32, ¶ 18 (recognizing the business-invitee duty of care as an "established dut[y] under Utah law"); *see also Davis*, 2022 UT App 87, ¶ 15 (stating that "both the supreme court and this court have already held that a business does owe a duty of reasonable care to its invitees"); *cf. Zazzetti v. Prestige Senior Living Center LLC*, 2022 UT App 42, ¶ 32, 509 P.3d 776 ("All possessors of land . . . owe duties of reasonable care to invitees who come onto their land."). This duty is simply one of reasonable care; indeed, "the duty of a business is simply to exercise due care and prudence for the safety of business invitees." *See Proctor v. Costco Wholesale Corp.*, 2013 UT App 226, ¶ 20, 311 P.3d 564 (cleaned up). In general, this requires business owners to "keep [their] premises reasonably safe for business invitees." *Rodriguez v. Kroger Co.*, 2018 UT 25, ¶ 14, 422 P.3d 815. And from a *duty* perspective—as opposed to a *breach*

perspective—it does not matter whether a particular unsafe condition is created by the business owner or by some other third party (such as an independent contractor, a member of the public, or even a criminal actor): a business owner has a duty to exercise reasonable care—whatever that might entail in a particular case—to keep its premises safe for invitees. *See FPA Sandy Mall Assocs.*, 2024 UT 32, ¶ 18 ("A possessor of land who holds it open to the public . . . is subject to liability to members of the public . . . for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons . . . ." (quoting Restatement (Second) of Torts § 344 (Am. L. Inst. 1965))).

¶19    And based on the allegations set forth in their complaint, the Schofields' case clearly falls within the ambit of this long-established duty. The Schofields have alleged that Starbucks operated a business in the strip mall that was open to the public, and they have alleged that Joslyn "was a patron and a business invitee of Starbucks" and was on Starbucks' premises when she was injured. Thus, unlike the *FPA Sandy Mall Associates* case—where it was unclear whether the case fell within the ambit of the business-invitee duty, because the defendant was the lessor landlord and not the business itself, *see id.* ¶ 25—the facts here (at least as alleged) are clear: Starbucks was a business and Joslyn was its customer, and therefore the facts as alleged fall within the ambit of the long-established business-invitee duty.[4]

---

4. Although we recognize that the term "invitee" has a broader definition than the term "customer," *see Davis v. Wal-Mart Stores Inc.*, 2022 UT App 87, ¶ 11, 514 P.3d 1209 ("The status of invitee includes business visitors who are invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." (cleaned up)), we nevertheless—for simplicity and readability—use the term "customer" at times in this opinion. As alleged, Joslyn was a

(continued…)

¶20    Thus, on the face of the complaint, the Schofields invoked the long-established business-invitee duty, and they supported that invocation with allegations that, if proved, would place this case directly within the ambit of that duty. And at least at this procedural stage, that is the end of the duty analysis: on the facts as alleged, Starbucks unquestionably owed Joslyn a duty of reasonable care. The remaining points of contention—whether that duty required Starbucks, in this specific case, to take any particular action that could have prevented Joslyn's injuries and death—are case-specific (as opposed to categorical) questions that go to breach and proximate cause, and not to whether a duty exists. *See Davis*, 2022 UT App 87, ¶ 11 (holding that it was "undisputed that [the defendant] is a business and that [the plaintiff] was visiting [the defendant] as its customer," and that "[a]s a result, [plaintiff] enjoyed the status of 'business invitee' while upon [the defendant's] property" (cleaned up)); *see also Boynton v. Kennecott Utah Copper, LLC*, 2021 UT 67, ¶ 23, 500 P.3d 847 ("The litigants will have the opportunity to address the facts of their specific cases when they argue about whether a breach of duty occurred and whether it caused the injury.").

¶21    Starbucks resists this conclusion by arguing that this case involved a "tragic freak accident" and that the injury to Joslyn arising from Driver's medical episode was wholly unforeseeable to Starbucks; indeed, Starbucks points out that the Schofields do not allege that such a thing has ever happened before at *this* Starbucks location. In support of its position, Starbucks relies heavily on *Dwiggins v. Morgan Jewelers*, 811 P.2d 182 (Utah 1991), in which our supreme court affirmed the dismissal of a negligence case on summary judgment, stating at one point that a business owner "is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur." *Id.* at 183 (cleaned up). In this

---

customer of Starbucks, which rendered her by definition also an invitee of Starbucks.

vein, Starbucks attempts to frame the scope of its duty on a case-specific level, arguing that—while it might have had a general duty of reasonable care to Joslyn—it had no duty "to protect patrons outside the store from a third-party . . . losing control of his truck in a parking lot across the street, crossing five lanes of traffic, traveling up a curb onto a sidewalk, and striking patrons sitting outside on the sidewalk with his vehicle at 29 mph."

¶22   But these are breach and proximate cause arguments, not duty arguments. As discussed above, Starbucks (a business open to the public) unquestionably owed a general duty of reasonable care to Joslyn (its customer) to keep the premises in a safe condition. Whether that duty required Starbucks—in this particular case and in this particular location—to take any specific action that might have prevented Joslyn's injuries and death are questions that implicate breach and proximate cause.

¶23   We acknowledge that some of the language our supreme court used in *Dwiggins* is at least potentially confusing on this point. But our best reading of *Dwiggins*—especially when viewed through the lens of our supreme court's more recent cases, most notably *Jeffs*—is that *Dwiggins* is a breach case and not a duty case.

¶24   For starters, *Dwiggins* frames the case, at the outset, like this: "[The plaintiff] argues that the lower court erred in determining that [the defendant] did not *breach* a duty of care or proximately cause [the plaintiff's] injuries as a matter of law." 811 P.2d at 182 (emphasis added). And later, the court stated that the question presented was one of "negligence" that is ordinarily "a question of fact for the jury." *Id.* at 183. Indeed, the court's analysis was quite granular: it involved an assessment of whether the defendant jewelry store breached its duty to the plaintiff-invitee by failing to provide adequate security, and specifically, whether a prior robbery at the store made a future robbery reasonably foreseeable such that better security measures were warranted. *Id.* at 182–83. This analysis necessarily raised case-specific factual

issues, including how often and how recently the store had previously been robbed, as well as the adequacy of the store's security measures at the time of the alleged harm. *Id.* The court also clearly stated that "[o]wners of land must . . . exercise due care and prudence for the safety of business invitees," and that this duty includes "a duty to protect [the business's] customers from criminal acts by third parties." *Id.* at 183.

¶25    But later in the opinion, the court stated as follows:

> Comment f to section 344 [of the Restatement (Second) of Torts] makes it clear that the possessor "is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur." Consistent with our earlier cases, we follow the Restatement and hold that this duty exists in Utah, but recognize that the duty does not arise until the business owner knows, or should know, that criminal acts are likely to occur.

*Id.* (cleaned up). Starbucks leans heavily on this passage, and it asserts that it means a court can dismiss a business owner from a negligence case, as a matter of law at the motion-to-dismiss stage, for lack of duty where there are no allegations that the business owner knew or should have known that a previous similar third-party event had occurred at the location in question. We read *Dwiggins* differently, for two reasons.

¶26    First, we think *Dwiggins*—even on its own terms and without regard to later cases from our supreme court—is best read as a breach case and not as a duty case. As already noted, the court originally framed the question as one of "breach" and "negligence." *Id.* at 182–83. But even the quotation Starbucks relies on strikes us as more of a breach holding than a duty holding. The court stated that a business owner "is ordinarily under no duty *to exercise any care*" against third-party actions

"until he knows or has reason to know that the acts of the third person are occurring." *Id.* at 183 (emphasis added). As we read this statement, the court was simply saying that, while of course the business owner owed a general duty of reasonable care to its customers, this duty did not require the business owner to do anything specific, in the exercise of that duty, regarding protection against third-party actions until the owner knew that such actions might be likely. Thus, while the court used the word "duty," its analysis actually focused on whether the defendant breached that duty by failing to implement specific security measures. *Id.*

¶27 Second, and relatedly, this reading is the only one that can reconcile *Dwiggins* with our supreme court's more recent pronouncements. *See, e.g.*, *FPA Sandy Mall Assocs.*, 2024 UT 32, ¶¶ 20–25 (discussing duty as a categorical concept and breach as a case-specific concept); *accord Jeffs*, 2012 UT 11, ¶¶ 21–28. If there are two potential interpretations of our supreme court's cases, it makes sense to select the one that harmonizes the court's caselaw. *See, e.g.*, *United States v. Hansen*, 929 F.3d 1238, 1255 (10th Cir. 2019) ("[W]e must endeavor to interpret our cases in a manner that permits them to coexist harmoniously with overarching and controlling Supreme Court precedent and with each other."); Bryan A. Garner et al., *The Law of Judicial Precedent* § 36, 300–02 (2016) (explaining that a court should harmonize "discordant opinions" of "equal authority" and that a lower court specifically should "exhaust all possibilities of reconciling" seemingly contradictory opinions from a higher court before finding a conflict). Indeed, we did exactly that in a very similar context in *Davis v. Wal-Mart Stores Inc.*, 2022 UT App 87, 514 P.3d 1209, where we interpreted several pre-*Jeffs* cases—opinions that had not been entirely clear on the distinction between duty and breach—as "turn[ing] on questions of breach, not duty." *Id.* ¶¶ 26–28 (analyzing *Schnuphase v. Storehouse Markets*, 918 P.2d 476 (Utah 1996); *Long v. Smith Food King Store*, 531 P.2d 360 (Utah 1973); and *Price v. Smith's Food & Drug Centers, Inc.*, 2011 UT App

66, 252 P.3d 365). In doing so, we clarified that "[w]hat those cases hold is that summary judgment is appropriate when reasonable minds cannot differ about whether the defendant's actions *violated* the duty of reasonable care." *Id.* ¶ 27 (emphasis added). In turn, we explained that "[the defendant] could in theory rely on these cases to argue that, under these circumstances, th[e] accident was so unforeseeable that no reasonable mind could conclude that [the defendant] had *breached* the duty of reasonable care that it owed to [the plaintiff]." *Id.* ¶ 28 (emphasis added). But we held that those cases could not be used to support the notion that a business owner owes no duty at all to its customers. *Id.* ¶¶ 26–28. We reach a similar conclusion here with regard to *Dwiggins*.[5]

---

5. At oral argument before this court, Starbucks referenced another case—in addition to *Dwiggins*—that it believed supported its position: *Gray v. Scott*, 565 P.2d 76 (Utah 1977). But *Gray* is yet another example of a pre-*Jeffs* case that did not clearly separate the question of duty from the question of breach and that—post-*Jeffs*—is best viewed as a breach case. At the outset of its analysis, the *Gray* court framed the issue on appeal as whether "there were sufficient facts in the record to submit to the jury the issue of whether [the] defendants *had violated their duty* to anticipate that another fight or shooting would be committed on the premises." *Id.* at 78 (emphasis added). The plaintiff argued that the defendants "should have investigated" a shooting in the alley near their premises and "should have taken precautionary steps to guard against the potential hazard posed by" third-party "belligerents." *Id.* at 78. The court rejected that argument and explained that the "trial court properly ruled these tenuous facts to be insufficient to submit to the jury the question . . . whether it was reasonable or not for [the] defendants to anticipate a shooting" at a celebration to be held at the defendants' premises on New Year's Eve. *Id.* The court concluded that "[u]nder the *particular facts in evidence*, it was not error to instruct that [the]

(continued…)

¶28 For all of these reasons, Starbucks owed Joslyn a duty of reasonable care, and *Dwiggins* is not to the contrary. The district court therefore erred in concluding, as a matter of law, that Starbucks owed Joslyn no duty.[6]

---

defendants had no duty to anticipate the commission of the subject crime." *Id.* (emphasis added). Again, the court did not hold that the defendants owed no duty of reasonable care to their patrons generally; rather, the issue was whether a jury could find that the defendants had acted unreasonably by failing to investigate a fight and intervene to protect the plaintiff. *Id.*

6. At oral argument before this court, Starbucks argued that a more robust duty analysis is necessary as a matter of policy because the duty element of a negligence case is the only element that presents a legal (as opposed to a factual) question, and because—in its view—business owners should be allowed, in appropriate cases, to obtain early dismissals of negligence cases pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure and should not be compelled to go through the often-expensive discovery phase of litigation. We see two problems with this contention. First, in some cases defendants might still be able to obtain a rule 12(b)(6) dismissal on duty grounds; this may be appropriate, for instance, where the plaintiff does not invoke an already-established duty and where *Jeffs*'s five-factor analysis leads to the conclusion that no new duty should be recognized, or where the plaintiff does not include in its complaint allegations sufficient to implicate an established duty. *See D.W. v. FPA Sandy Mall Assocs.*, 2024 UT 32, ¶¶ 19, 25, 554 P.3d 1052. Second, and in any event, our supreme court has already made whatever "policy" choices might be relevant here when it held, in *Jeffs* and other cases, that the duty analysis requires a categorical approach and the application of bright-line rules. *See, e.g.*, *FPA Sandy Mall Assocs.*, 2024 UT 32, ¶¶ 19, 25; *Boynton v. Kennecott Utah Copper*,

(continued…)

B. Proximate Cause

¶29 Our conclusion that the district court erred in dismissing the Schofields' case for lack of duty requires us to address Starbucks' alternative argument, in which it invites us to affirm the district court's dismissal order on the alternative ground that the Schofields cannot show proximate cause. Starbucks made this argument to the district court too, and that court rejected the argument as premature at this procedural stage. On this point, we agree with the district court.

¶30 As noted, proximate cause is one of the elements of a negligence action that presents questions of fact that are, in most cases, reserved for the factfinder at trial. *See Steffensen v. Smith's Mgmt. Corp.*, 820 P.2d 482, 486 (Utah Ct. App. 1991) ("It is well established that the question of proximate cause is generally reserved for the jury."), *aff'd*, 862 P.2d 1342 (Utah 1993). Indeed, "the issue of proximate cause should be taken from the jury only where: (1) there is no evidence to establish a causal connection, thus leaving causation to jury speculation, or (2) where reasonable persons could not differ on the inferences to be derived from the evidence on proximate causation." *Id.* at 487 (cleaned up). And at this early stage of the litigation, dismissal is appropriate "only where it is certain that the plaintiff cannot prevail under *any*

_____

*LLC*, 2021 UT 67, ¶ 23, 500 P.3d 847; *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 23, 275 P.3d 228. We are bound by those decisions as well as our own prior decision in *Davis*. *See Ortega v. Ridgewood Estates LLC*, 2016 UT App 131, ¶ 30, 379 P.3d 18 ("We are bound by vertical stare decisis to follow strictly the decisions rendered by the Utah Supreme Court." (cleaned up)); *Sterling Fiduciaries LLC v. JPMorgan Chase Bank NA*, 2017 UT App 135, ¶ 14, 402 P.3d 130 ("Horizontal stare decisis requires that a court of appeals follow its own prior decisions. This doctrine applies with equal force to courts comprised of multiple panels, requiring each panel to observe the prior decisions of another." (cleaned up)).

*potential set of facts.*" *Zubiate v. American Family Ins. Co.*, 2022 UT App 144, ¶ 13, 524 P.3d 148 (emphasis added).

¶31 We acknowledge that the Schofields bear the ultimate burden of demonstrating that Starbucks committed a breach of duty that proximately caused Joslyn's injury and death. In order to prevail, the Schofields will need to show, among other things, that Starbucks' duty of reasonable care required it to take certain specific actions with regard to the Seating Area, and that those actions (if taken) would have been likely to prevent Joslyn's injuries. And here, where the object that caused the injuries was a large runaway pickup truck moving at 29 miles per hour, we wonder what sort of actions Starbucks reasonably could or should have taken that might have prevented the truck from injuring Joslyn. But be all of that as it may, our task at this procedural stage is to examine the Schofields' allegations and to consider whether, if proved true, those facts might support the Schofields' claims of breach and proximate cause. And we are not now prepared to say that there exists no potential set of facts under which the Schofields might be able to make the required showing.

¶32 Starbucks will, of course, be free to make a motion, at the summary judgment stage and after the record has been more fully developed, for dismissal on breach or proximate cause grounds. While any such motion will involve factual issues that are usually reserved for the factfinder, *see S*teffensen, 820 P.2d at 486, the grant of such motions is nevertheless sometimes appropriate, *see, e.g.*, *Richmond v. Bateman*, 2024 UT App 103, ¶ 43, 554 P.3d 341 (observing that "there are cases in which summary judgment may be appropriate on questions of causation generally or superseding cause more particularly" (cleaned up)); *Doutre v. Box Elder County*, 2024 UT App 58, ¶ 56, 548 P.3d 914 (affirming a district court's summary judgment order and observing that "this is a case where reasonable minds cannot differ" about whether the defendant acted "with reasonable diligence"), *cert. denied,* 554 P.3d 1096 (Utah 2024). We of course offer no opinion as to how any such

motion ought to be decided. For now, however, we conclude simply that dismissal on proximate cause grounds is not appropriate at *this* procedural stage. And on that basis, we decline Starbucks' invitation to affirm the court's dismissal order on the alternative ground of lack of proximate cause.

## II. Motion to Amend

¶33 Finally, the Schofields challenge the district court's ruling denying their motion to amend their complaint. We need not reach the merits of this issue, though, because we have reinstated the initial complaint that the district court erroneously dismissed as a matter of law. With that initial complaint reinstated, it is no longer clear to us that the Schofields still desire to amend their complaint. In the event that they do, they are of course free to renew their motion to amend on remand, and the district court should consider any such motion afresh and in context, and it should take note that at least two of the court's stated rationales for denying the Schofields' motion to amend—timeliness and futility—are no longer valid in light of our decision herein.

## CONCLUSION

¶34 Businesses owe a duty of reasonable care to their customers, and this duty of care is well-recognized under Utah law. When a plaintiff invokes that duty of care in a complaint and grounds that invocation with allegations showing that the duty applies, dismissal for failure to state a claim on the issue of duty is improper. In this situation, disputes concerning the foreseeability of the alleged harm and the circumstances that gave rise to Starbucks' purported failure to warn or protect Joslyn are questions that go to breach and proximate cause, and not to duty. Accepting the allegations in the Schofields' complaint as true, Starbucks owed Joslyn a duty of reasonable care, and the district court's determination to the contrary was erroneous.

¶35   Accordingly, we reverse the district court's order of dismissal and remand this matter to the district court for further proceedings consistent with this opinion.

―――――――