**2026 UT App 66**

# THE UTAH COURT OF APPEALS

JEREMY ROSSER AND BRANDON KILBURN,
Appellants,
*v.*
ELITE CRAFT HOMES, LLC AND JPC CONTRACTING, INC.,
Appellees.

Amended Opinion[*]
No. 20231023-CA
Filed April 23, 2026

Second District Court, Ogden Department
The Honorable Craig Hall
No. 220903070

Jonathan R. Schofield, Dick J. Baldwin,
Steven R. Glauser, and Daniel S. Sorenson,
Attorneys for Appellants

Peter H. Barlow and Axel Trumbo,
Attorneys for Appellees

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGE MICHELE M. CHRISTIANSEN FORSTER concurred.
JUDGE RYAN M. HARRIS concurred with opinion.

---

[*] This Amended Opinion replaces the Opinion in Case No. 20231023-CA issued on February 5, 2026. Appellees filed a petition for rehearing after we published our original opinion, and we called for a response. We grant the petition for the limited purpose of removing references to the labels of "plus" and "minus" in paragraphs 16, 18, and 21. We also updated paragraphs 17 and 22; reworded headings I.A., I.B., and I.C.; and added headings I.D. and I.E. In all other respects, the petition is denied.

OLIVER, Judge:

¶1    On a summer evening in 2021, a fire at a construction site owned and operated by Elite Craft Homes, LLC (Elite) spread to the neighboring house owned and occupied by Jeremy Rosser and Brandon Kilburn (collectively, Residents). Residents escaped the fire, but their pets perished, and their house was destroyed. Residents sued Elite for negligence, negligent infliction of emotional distress, trespass, and nuisance. The district court granted summary judgment on all four claims after concluding that Elite owed Residents no duty and that Residents had not demonstrated the requisite intent for their trespass claim. We conclude that Elite did owe a duty to Residents as adjacent landowners but that a claim of negligent trespass is not available in Utah. We thus affirm the district court's grant of summary judgment on the trespass claim, but we reverse the grant of summary judgment on the claims for negligence, negligent infliction of emotional distress, and nuisance.

## BACKGROUND[1]

*The Construction Site*

¶2    In 2020, Residents purchased a home in Ogden. One year later, Elite began construction of a four-story apartment building (the Building) on the lot adjacent to Residents' property (the Construction Site). The Building was built at the ten-foot setback from the shared property line.

¶3    By late June 2021, the framing of the Building was nearly complete and the Building was four stories tall, roofless, and made primarily of wood. The Construction Site had no exterior fencing because subcontractors were delivering lumber to all four

---

1. "When reviewing a grant of summary judgment, we view the facts in the light most favorable to the non-moving party." *Utah Golf Ass'n v. City of N. Salt Lake*, 2003 UT 38, ¶ 10, 79 P.3d 919.

stories of the Building with telescopic forklifts and Elite believed fencing would inhibit their work. The Construction Site did have a temporary fence in the northeast corner surrounding recently delivered lumber to protect it from theft. Elite's other anti-theft measures included the following steps at the end of each workday: instructing all subcontractors to remove tools and materials, locking the on-site portable toilet, parking the telescopic forklift so it blocked the only after-hours vehicle entrance, and having one of the superintendents walk the Construction Site to verify compliance. Despite these measures, the Construction Site and the Building were still accessible to foot traffic after hours.

¶4    Many unhoused individuals lived in a shelter and a park near the Construction Site. Residents frequently saw individuals who appeared to be unhoused in and around the Construction Site. On one occasion, Residents called the police after they heard screaming coming from inside the Building after workers had left.

¶5    Prior to the fire, Elite knew that unauthorized people had accessed the Construction Site outside of working hours. On more than one occasion, Elite workers noticed makeshift shelters built at the Construction Site. Once it discovered the shelters, Elite immediately removed them and discarded any associated food wrappers or beverage containers. Framers also reported to a superintendent that one morning in late May or early June they found people inside the Building when they arrived for work.

*The Fire*

¶6    On the evening of June 28, 2021, security cameras from a business across the street from the Construction Site captured footage of people entering and exiting the Construction Site between 8:26 p.m. and 10:14 p.m. At 10:27 p.m., the first signs of a fire were observed through a window in the Building, and several individuals left the Building between 10:29 p.m. and 10:42 p.m. The first 911 call regarding the fire occurred at 10:42 p.m. The

police arrived at 10:45 p.m. and immediately began evacuating the surrounding area. Fire trucks began arriving at 10:47 p.m.

¶7     Residents were home asleep when the fire started. The fire awakened Kilburn, who then woke Rosser. When Rosser opened the front door to see what was going on, smoke and heat poured into the home. Residents realized they needed to evacuate immediately and attempted to gather their cat and two dogs, but they were unable to locate them. Residents ultimately fled their house without their shoes or cellphones, leaving the front door open so their pets would have a way to escape. As they fled their home, they felt their necks burning from the heat of the fire. While they were fleeing, a transformer located on a power pole between their house and the Construction Site exploded and the debris struck Kilburn, cutting his arm. The fire destroyed their house, and their pets did not survive.

¶8     Fire investigators were unable to determine precisely when the fire began or its exact cause, but it appeared the fire grew gradually until it got so hot that everything in the Building caught fire in a "flashover." Flames from the Construction Site caused Residents' home to catch fire. The fire was so intense that it ignited everything nearby and melted security cameras hundreds of feet from the Construction Site.

*The Lawsuit*

¶9     Residents filed this case against Elite in district court, asserting claims of negligence, negligent infliction of emotional distress, trespass, and nuisance. Residents alleged Elite acted negligently by failing to prevent trespassers from entering the Construction Site when the Building was in a highly flammable state.

¶10    Elite moved for summary judgment on all four claims, arguing that because it had no special legal relationship with Residents, it owed them no duty to protect them from harm that resulted from the criminal acts of a third party. Elite also argued,

in the alternative, that Residents could not prove negligent infliction of emotional distress because they could not show they were in the zone of danger or demonstrate severe mental or physical manifestations related to their alleged emotional distress, nor could Residents prove trespass because they could not show that the trespass of the fire onto their property was intentional.

¶11 In response, Residents argued they did not need to prove a special legal relationship because Elite negligently created a situation that caused the fire, making Elite's conduct an affirmative act, not an omission. Residents argued that construction of the Building "without mitigating the risk of trespassers causing a fire constituted an affirmative act, and a duty of care inhered." Alternatively, Residents argued that they were within the zone of danger and suffered severe manifestations of emotional distress, as well as that Utah case law could be interpreted to allow for recovery on negligent trespass claims.

¶12 The district court granted Elite's motion for summary judgment. The district court dismissed the negligence and negligent infliction of emotional distress claims because it found Elite did not have a duty of care toward Residents "to protect them from damages caused by an unknown third party who started the fire." The district court dismissed the trespass claim because Residents could not show any intent to trespass on the part of Elite. In the alternative, the court determined that even if the trespass claim could be based on negligence, it also failed because Elite did not owe Residents a duty. The district court dismissed the nuisance claim because the parties stipulated to its dismissal "absent any other valid cause of action."

## ISSUE AND STANDARD OF REVIEW

¶13 Residents argue the district court erred in granting Elite's motion for summary judgment. "The grant or denial of summary judgment presents a question of law and is reviewed for

correctness." *Liley v. Cedar Springs Ranch Inc.*, 2017 UT App 166, ¶ 11, 405 P.3d 817. "Most cases involving claims of negligence are not susceptible to summary disposition, but the initial question of the existence of a legal duty in tort cases is a question of law" that "we review for correctness." *Id.* (cleaned up).

## ANALYSIS

¶14    A claim of negligence requires a plaintiff to prove that "(1) defendant owed plaintiff a duty of care, (2) defendant breached that duty, and . . . (3) the breach was the proximate cause of (4) plaintiff's injuries or damages." *D.W. v. FPA Sandy Mall Assocs.*, 2024 UT 32, ¶ 16 n.2, 554 P.3d 1052 (quoting *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 5 n.2, 275 P.3d 228). "The main conceptual difference between duty and breach is that duty is a question of law determined on a categorical basis regarding an entire class of cases, while breach and proximate cause are questions for the fact finder determined on a case-specific basis." *Estate of Schofield v. Starbucks Corp.*, 2025 UT App 29, ¶ 15, 566 P.3d 777 (cleaned up).

¶15    We first address whether Elite owed a duty of care to Residents under Utah law. Because we conclude that Elite did owe Residents a duty, we then address the alternative arguments asserted by Elite regarding Residents' claims for negligent infliction of emotional distress and trespass. Finally, we address the impact of our determinations on Residents' nuisance claim.

## I. Duty

¶16    "The complexity of a court's categorical-level duty analysis depends, in large part, on whether the plaintiff is invoking a duty that has already been recognized and established under Utah law." *Estate of Schofield v. Starbucks Corp.*, 2025 UT App 29, ¶ 16, 566 P.3d 777. Here, all parties acknowledge that no Utah court has recognized a duty "to neighboring landowners to exercise reasonable care to ensure foreseeable harms would not result

from [the creation of a] dangerous condition."[2] In cases where there is no pre-established categorical duty, courts are instructed to undertake an analysis of "several factors relevant to determining whether" to recognize a new categorical duty, including the following:

> (1) whether the defendant's allegedly tortious conduct consists of an affirmative act or merely an omission; (2) the legal relationship of the parties; (3) the foreseeability or likelihood of injury; (4) public policy as to which party can best bear the loss occasioned by the injury; and (5) other general policy considerations.

*B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 5, 275 P.3d 228 (cleaned up).

¶17 These factors "will play different roles depending on the case." *D.W. v. FPA Sandy Mall Assocs.*, 2024 UT 32, ¶ 22 n.5, 554 P.3d 1052. While "[s]ome factors are featured heavily in certain types of cases, . . . other factors play a less important, or different, role." *Herland v. Izatt*, 2015 UT 30, ¶ 13, 345 P.3d 661. And, ultimately, the determination of whether a duty is owed can be based on a single *Jeffs* factor if that factor weighs strongly enough.

---

2. We note that section 54 of the Restatement (Third) of Torts sets forth a duty quite similar to the one claimed by Residents. *See* Restatement (Third) of Torts: Liab. for Physical and Emotional Harm § 54 (A.L.I. 2012). Section 54 provides that the "possessor of land has a duty of reasonable care for artificial conditions or conduct on the land that poses a risk of physical harm to persons or property not on the land." *Id.* However, Residents did not raise section 54 before the district court, rendering any argument for its adoption unpreserved, and we therefore do not consider it. *See* *Hill v. Superior Prop. Mgmt. Servs., Inc.*, 2013 UT 60, ¶¶ 43–46, 321 P.3d 1054 (declining to consider a theory for imposing a duty where the appellant did not specifically present it to the district court).

*See Kirk v. Anderson*, 2021 UT 41, ¶¶ 18, 20, 496 P.3d 66 (assuming that the first three factors weighed in favor of recognizing a duty but nevertheless concluding that no duty existed because "the fifth *Jeffs* factor" "carrie[d] the day in determining that a duty d[id] not exist"). We address the *Jeffs* factors below, concluding that three of the factors support imposing a duty.

A.     Foreseeability

¶18    We first consider the "foreseeability or likelihood of injury." *Jeffs*, 2012 UT 11, ¶ 5. Foreseeability plays "an elevated role in this court's duty analyses" and is a factor that "we may rely upon . . . in imposing a duty where one would otherwise not exist." *Kirk*, 2021 UT 41, ¶ 17 (cleaned up). In the context of duty, foreseeability "is evaluated at a broad, categorical level." *Jeffs*, 2012 UT 11, ¶ 25. "The appropriate foreseeability question for duty analysis is whether a category of cases includes individual cases in which the likelihood of some type of harm is sufficiently high that a reasonable person could anticipate a general risk of injury to others." *Id.* ¶ 27. In our analysis of foreseeability at the duty level, then, we are concerned with "the general relationship between the alleged tortfeasor and the victim and the general foreseeability of harm" rather than "the specific mechanism of the harm." *Id.* ¶ 25 (cleaned up).

¶19    Here, Residents argue that the proper question is the foreseeability of fires starting on construction sites and spreading to neighboring properties. Elite similarly argues that the proper question is the foreseeability of fire damage caused by a trespasser during the framing process. But both parties take too narrow a view of foreseeability; such fact-specific arguments are more suited to an analysis of breach or proximate cause. Indeed, both of these arguments focus on the "specific mechanism of the harm" and not the "general foreseeability of harm." *Id.* (explaining that "in [a] duty analysis, foreseeability . . . relates to . . . the general foreseeability of harm" (cleaned up)).

¶20    Thus, the proper question is whether harm is generally foreseeable to neighboring landowners or inhabitants when landowners fail to exercise reasonable care when undertaking construction on their property. There are many foreseeable harms to neighbors that could arise from activities undertaken in conjunction with construction: land clearing could lead to trees falling, excavation could cause landslides, digging could result in a burst water main and subsequent flooding, gas lines could break, sinkholes could form, and framing could collapse. The likelihood of harm from failing to exercise reasonable care in undertaking construction is sufficiently high that it is generally foreseeable to a reasonable person that such activities may injure a neighbor. *See id.* ¶ 27. Therefore, this factor weighs in favor of imposing a duty.

B.      Affirmative Act v. Omission

¶21    Next, we consider "whether the defendant's allegedly tortious conduct consists of an affirmative act or merely an omission." *Id.* ¶ 5. Residents argue that Elite undertook the affirmative act of constructing the Building. Elite, in contrast, argues that Residents' claim is based on an omission because they allege that Elite "failed to prevent a third party . . . from starting the fire." But we need not resolve this issue because even if we assume that Elite's conduct constitutes an omission that would weigh against imposing a duty, this factor would not outweigh foreseeability or its combination with the two remaining factors that we conclude also weigh in favor of imposing a duty. *See infra* ¶¶ 22–29. Accordingly, we assume, without deciding, that this factor weighs against imposition of a duty.[3]

---

3. Residents do not argue on appeal that the second *Jeffs* factor regarding special legal relationships weighs in favor of a duty of care, instead arguing that it is not applicable because Elite's "conduct consists of affirmative acts." But because we assume

(continued…)

C.      Best Bear the Loss

¶22    We now assess "which party can best bear the loss occasioned by the injury." *Jeffs*, 2012 UT 11, ¶ 5 (cleaned up). This "factor considers whether the defendant is best situated to take reasonable precautions to avoid injury." *Id.* ¶ 30. It "cut[s] against the imposition of a duty where a victim or some other third party is in a superior position of knowledge or control to avoid the loss in question." *Id.* Essentially, this factor considers "who can best prevent the loss." *Boynton v. Kennecott Utah Copper, LLC*, 2021 UT 67, ¶ 39, 500 P.3d 847.

¶23    Although Elite argues that this factor weighs against a duty and "a contractor is unlikely to be in the best position to know what happens at the construction site after hours," we disagree. We believe the landowner to be the only one who can truly "take reasonable precautions to avoid injury," *id.* (cleaned up), as the landowner is the only one with legal authority to take action on the land. Even Elite's argument seems to acknowledge this reality. When arguing that neighboring landowners can "learn of activities at the jobsite," Elite acknowledged that the only action then available to them is to "warn the contractor and authorities." Simply put, Elite has sole control of the Construction Site and is therefore in the best position to bear this burden. This factor thus supports the imposition of a duty.

D.      Public Policy

¶24    Finally, we consider the last factor: "other general policy considerations." *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 5, 275 P.3d 228 (cleaned up). Specifically, we consider "whether general policy considerations require a categorical decision removing

---

that Elite's conduct was not an affirmative act and thus weighs against imposition of a duty, we likewise assume this factor weighs against imposition of a duty.

duty from a class of cases." *Boynton*, 2021 UT 67, ¶ 44. As our supreme court has recognized,

> Concluding that no duty exists means that, for certain categories of cases, defendants may not be held accountable for damages they carelessly cause, no matter how unreasonable their conduct. But recognizing a duty does not itself mean that a defendant will incur liability; a plaintiff must still prove the other elements of negligence (breach of the duty, causation, and damages).

*Mower v. Baird*, 2018 UT 29, ¶ 30, 422 P.3d 837 (cleaned up).

¶25 Residents argue that "the public would not benefit from allowing owners and contractors to operate unreasonably and put neighbors at risk," while Elite counters that a duty should not be imposed because a third party trespassing on a construction site and causing a fire is unlikely. But again, Elite takes too narrow a view of duty. When considering whether to impose a duty, "each factor must be analyzed at a broad, categorical level for a class of defendants rather than a factually intense inquiry decided on a case-by-case basis." *Scott v. Universal Sales, Inc.*, 2015 UT 64, ¶ 29, 356 P.3d 1172 (cleaned up). Looking at that broad, categorical level, we conclude that general policy considerations favor imposition of a duty.

¶26 We find guidance in *Kessler v. Mortenson*, 2000 UT 95, 16 P.3d 1225. In *Kessler*, a mother brought suit against a residential homebuilder for attractive nuisance after her child was injured from falling through a hole in the construction site. *Id*. ¶¶ 3–4. In examining whether possessors of land are "accountable for physical injuries to children caused by an artificial condition," our supreme court stated that "[r]esidential construction sites are temporary hazards created by the homebuilder." *Id.* ¶¶ 7, 9. And the court concluded that "the burden imposed on the homebuilder of minimizing or eliminating the hazard to children

is a temporary burden almost exclusively within the control of the homebuilder." *Id*. ¶ 9. Although *Kessler* involved a claim for attractive nuisance and not a claim for negligence, we see no meaningful difference in the temporary hazard created by residential construction sites and the Construction Site here, or in the rationale for imposing a burden on the entity undertaking the construction.

¶27 Next, we find the reasoning of the Court of Appeals of Maryland[4] on a nearly identical issue persuasive. In *Steamfitters Local Union No. 602 v. Erie Insurance Exchange*, 233 A.3d 59, 64 (Md. 2020), the court considered "whether the owner of a commercial property owe[d] its neighbor a common law duty to use reasonable care to prevent the risk of a spread of fire." *Id*. While the court took a fact-specific approach, it discussed, in depth, the long-recognized categorical duty between neighboring landowners. *See id.* at 73 ("For at least the past 80 years, this [c]ourt has recognized that ownership, operation, and maintenance of property come with the common law duty to use reasonable care so as not to cause harm to the neighboring property owners."). Specifically, it "recognized the general principle of law that, within certain limitations, one must use [one's] own rights and property so as to do no injury to those of others." *Id.* at 74 (cleaned up). In accordance with this general principle, the Maryland court stated that "the possessor of land is first of all required to exercise reasonable care, with regard to any activities which he carries on, for the protection of those outside of his premises." *Id.* at 75 (cleaned up).

¶28 Lastly, we consider a world where no duty exists between neighboring landowners when engaging in construction on their land. Were there no duty, a landowner would face no consequences for failing to exercise reasonable care, even if it caused harm to a neighbor. As explained, *see supra* ¶ 20, any

---

4. At the time, the Court of Appeals was the name of Maryland's highest court.

number of foreseeable harms to a neighbor could arise from unreasonably undertaken construction activities. And we also concluded that the burden of preventing harm is best borne by the landowner who undertakes the activity and not the neighbor who suffers the injury. *See supra* ¶ 23.

¶29 Accordingly, because the burden on landowners to exercise reasonable care when engaged in construction is "relatively slight, and given the high risk of injury that may potentially result," this factor supports imposition of a duty. *Herland v. Izatt*, 2015 UT 30, ¶ 39, 345 P.3d 661.

E.     The Duty Owed

¶30     In sum, three of the *Jeffs* factors favor imposing a duty of care on Elite, and we determine that these three factors outweigh the remaining two. We therefore conclude that the categorical duty applicable in this case is as follows: landowners owe a duty to adjoining landowners and inhabitants to exercise reasonable care when they engage in construction activities on their property.

¶31     Whether the facts in this case show a breach of that duty and whether any breach caused Residents' damages are questions of fact, which Residents bear the burden of demonstrating. Of course, Elite will be free to make motions for summary judgment on breach or proximate causation after further development of the record. "While any such motion will involve factual issues that are usually reserved for the factfinder, the grant of such motions is nevertheless sometimes appropriate . . . ." *Estate of Schofield v. Starbucks Corp.*, 2025 UT App 29, ¶ 32, 566 P.3d 777 (cleaned up). We, of course, offer no opinion as to the merits of any potential dispositive motion Elite may file.

¶32     Therefore, the district court erred in concluding that Elite owed no duty of care to Residents, and on that basis we reverse the grant of summary judgment.

## II. Negligent Infliction of Emotional Distress

¶33 The district court granted summary judgment on the negligent infliction of emotional distress claim based solely on an absence of negligence because it found Elite owed Residents no duty. As stated, *see supra* ¶¶ 30–32, Elite did owe Residents a duty in this instance. We therefore must examine Elite's alternative argument for summary judgment on this claim.

¶34 Elite asserts that Residents' evidence does not satisfy the requirements for a negligent infliction of emotional distress claim. A claim for negligent infliction of emotional distress allows plaintiffs "within the zone of danger to recover for emotional distress caused by fear for personal safety."[5] *Mower v. Baird*, 2018 UT 29, ¶ 52, 422 P.3d 837 (cleaned up). Plaintiffs may also "recover for emotional distress caused by witnessing injury to others . . . when the plaintiff[s are] within the zone of danger created by the defendant's breach of duty." *Id.* ¶ 53 (cleaned up). Here, the facts related to the zone of danger and the requisite emotional distress were disputed on summary judgment.

¶35 "Summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *McCleve Props., LLC v. D. Ray Hult Family Ltd. P'ship*, 2013 UT App 185, ¶ 9, 307 P.3d 650

---

5. Our supreme court has "adopted the 'zone of danger' theory of recovery for negligent infliction of emotional distress. This theory, found in section 313 of the Restatement [(Second) of Torts (1965)], allows recovery only for those who are victims of another's breach of duty. In other words, only those placed in actual peril as a result of a defendant's breach of duty are allowed recovery for negligent infliction of emotional distress. Those outside the zone of danger created by the defendant are not allowed recovery for the emotional distress caused by witnessing the injury of others." *Hansen v. Sea Ray Boats, Inc.*, 830 P.2d 236, 239 (Utah 1992) (cleaned up).

(cleaned up). But the district court did not make a determination as to whether these factual disputes were genuine and material to these issues because it granted summary judgment to Elite on Residents' emotional distress claim based on a lack of duty owed. "Because we are mindful that we are a court of review, not of first view, and because we would value the district court's analysis, we remand for the district court to consider the merits" of Elite's arguments. *R.O.A. Gen. Inc. v. Salt Lake City Corp.*, 2022 UT App 141, ¶ 39, 525 P.3d 100 (cleaned up).

¶36    Accordingly, we reverse the grant of summary judgment on the negligent infliction of emotional distress claim, but we make no determination on its merits.

### III. Trespass

¶37    The district court granted summary judgment on Residents' trespass claim because they "failed to show that there was any intent on the part of [Elite] to trespass on their property."[6] Residents now invite us to adopt a cause of action for negligent trespass. For the reasons discussed below, we decline to adopt a claim for negligent trespass because it is legally redundant.

¶38    "Utah cases have applied the definition of trespass onto land found in section 158 of the Restatement (Second) of Torts." *Carter v. Done*, 2012 UT App 72, ¶ 17, 276 P.3d 1127. This form of trespass is otherwise known as intentional trespass, and as the name suggests, it requires the perpetrator to intentionally enter

---

6. The district court secondarily noted that "[t]o the extent that trespass can be based on negligence of [Elite], this claim would fail as a matter of law based on lack of duty." Although we find there was a duty, this does not change the ultimate outcome because Utah does not recognize a negligent trespass claim. *See infra* ¶¶ 40–41.

the land of another.[7] Restatement (Second) of Torts § 158 (A.L.I. 1965). We also find further support that trespass must be intentional in the forthcoming Restatement (Fourth) of Property, wherein negligent trespass is disclaimed and it is clarified that

> [t]o be subject to liability for trespass to land, the actor must intend to make physical contact with, or intend to remain on, or intend to cause a thing or person to make physical contact with or remain on, land that is in another'[s] possession. The actor need *not* intend to violate another'[s] possessory rights. Nor is it necessary for the actor to know, or to have reason to know, that the land is in the possession of the other.

Restatement (Fourth) of Prop. § 1.5 (A.L.I., Tentative Draft No. 2, 2021).[8]

¶39 The "intent requirement of trespass is relatively undemanding." *Id*. cmt. b. A defendant need not intend to be on the land of another; "it is necessary only that the actor intentionally be upon any part of the land in question." *Gallegos v. Lloyd*, 2008 UT App 40, ¶ 11, 178 P.3d 922 (quoting Restatement

---

7. "At common law, trespass covered a much broader spectrum of tortious conduct than it does currently. In the past, the term 'trespass' not only applied to the intentional tort of trespass as we know it today, but also to other types of invasions of a property owner's interests, i.e., intrusions resulting from negligent conduct or ultrahazardous conduct." *Brigham Young Univ. v. Paulsen Constr. Co.*, 744 P.2d 1370, 1372 n.2 (Utah 1987) (cleaned up).

8. Specifically, the tentative draft indicates that "[t]his Section replaces [the] Restatement of the Law Second, Torts §§ 164–66." Restatement (Fourth) of Prop. § 1.5 cmt. a (A.L.I., Tentative Draft No. 2, 2021). The Restatement (Second) of Torts section 165 included a cause of action for negligent trespass.

(Second) of Torts § 164 cmt. a (A.L.I. 1965)). This level of intent encompasses a great deal of accidental invasions.

¶40   But plaintiffs are not left without recourse for negligent trespass. Such conduct is covered by a general negligence claim because a negligent trespass claim, like negligence, requires proof of duty, breach, causation, and damages. *See* Restatement (Second) of Torts § 165 cmt. d (A.L.I. 1965) ("The rules which determine whether the actor's conduct . . . is negligent as involving an unreasonable risk of an invasion of the other's interest in the exclusive possession of land are the same as those which determine . . . negligence of conduct as threatening bodily harm."). And even in states that recognize a claim for negligent trespass, such claims are merged into a general negligence claim. In Washington, for example, courts "treat claims for trespass and negligence arising from a single set of facts as a single negligence claim." *Pruitt v. Douglas County*, 66 P.3d 1111, 1115 (Wash. Ct. App. 2003).

¶41   Therefore, we decline to recognize this cause of action and affirm the district court's dismissal of Residents' trespass claim.

## IV. Nuisance

¶42   The district court dismissed Residents' remaining claim for nuisance because "the parties agreed and stipulated that absent any other valid cause of action, the cause of action for nuisance fails as a matter of law." Because we reverse the district court's grant of summary judgment on several claims, we accordingly reverse the grant of summary judgment on the nuisance claim.

## CONCLUSION

¶43   We affirm the district court's grant of summary judgment on intentional trespass and conclude that Utah law does not recognize a claim for negligent trespass. But we reverse the grant of summary judgment on Residents' other claims. In particular,

we conclude that Utah law recognizes that landowners owe a duty to adjoining landowners and inhabitants to exercise reasonable care when engaging in construction activities on their property. We therefore reverse the grant of summary judgment on Residents' claims for negligence, negligent infliction of emotional distress, and nuisance.

————————

HARRIS, Judge (concurring):

¶44 I concur fully in the lead opinion. I write separately only to express my view that I would have been interested in considering adoption of section 54 of the Restatement (Third) of Torts: Liability for Physical and Emotional Harm (Section 54), had Residents made that request to the district court and to us. I urge parties in relevant future cases, where appropriate, to ask for adoption of the duty set forth in Section 54, so that courts may, after full briefing, consider the question.

¶45 As an initial matter, I agree with the lead opinion's recitation that "Residents did not raise [S]ection 54 before the district court, rendering any argument for its adoption unpreserved." *See supra* ¶ 16 n.2. And although Residents mentioned Section 54 in passing in their opening brief, and then included a more fulsome discussion of it in their reply brief, they expressly stopped short, during oral argument before this court, of asking us to adopt Section 54, in part because they acknowledged that they had failed to make the request at the district court level.

¶46 Instead, Residents asked us to recognize a more limited duty, one the lead opinion describes as a duty owed "to adjoining landowners and inhabitants to exercise reasonable care when they engage in construction activities on their property." *See supra* ¶ 30. As articulated, this duty concerns only landowners' "construction activities," and it does not apply to any other sort of activity

landowners might engage in on their land. *Supra* ¶ 30. Moreover, this duty is owed only "to adjoining landowners and inhabitants" rather than more generally to anyone not on the land. *Supra* ¶ 30. From my perspective, these limitations inherent in the duty we recognize in the lead opinion are driven largely by the scope of the request made to us by Residents, who asked us to recognize this more limited duty rather than the broader one described in Section 54.

¶47 Section 54, which was adopted by the American Law Institute in 2012, was intended to amalgamate three different sections that had appeared in the Restatement (Second) of Torts. *See* Restatement (Third) of Torts: Liab. for Physical and Emotional Harm § 54 cmt. a (A.L.I. 2012) (stating that Section 54 was intended to "replace[]" sections 364, 366, and 371 of the Restatement (Second) of Torts). At its top line, Section 54 recognizes that any "possessor of land has a duty of reasonable care for artificial conditions or conduct on the land that poses a risk of physical harm to persons or property not on the land." *Id.* § 54. Like the more limited duty we recognize in the lead opinion, the Section 54 duty also applies "with regard to artificial conditions on the land that were constructed or placed there by other entrants, even if they were trespassers." *Id.* § 54 cmt. b; *cf. Estate of Schofield v. Starbucks Corp.*, 2025 UT App 29, ¶ 18, 566 P.3d 777 ("[F]rom a *duty* perspective—as opposed to a *breach* perspective—it does not matter whether a particular unsafe condition is created by the business owner or by some other third party . . . : a business owner has a duty to exercise reasonable care—whatever that might entail in a particular case—to keep its premises safe for invitees.").

¶48 Yet the drafters of Section 54 were clear that the duty it describes contains neither of the two limitations I referenced two paragraphs earlier. In particular, the Section 54 duty is concerned with any activity upon the land, not just construction, because "[l]and possessors may engage in many different forms of activity on their land that will pose risks to others off the land," including

"build[ing] automobiles, dispens[ing] drugs, construct[ing] structures, min[ing] coal, or engag[ing] in myriad other activities." *See* Restatement (Third) of Torts: Liab. for Physical and Emotional Harm § 54 cmt. b (A.L.I. 2012). And the duty is owed not just to people who come onto the land or even to adjoining landowners, but it instead extends generally to anyone "not on the land." *Id.* § 54.

¶49    To my knowledge, no Utah appellate court has been asked to adopt Section 54. And to my knowledge, no Utah court has actually adopted any of Section 54's predecessor sections. However, on two occasions, Utah appellate courts have cited approvingly two of Section 54's predecessor sections. In *AMS Salt Industries, Inc. v. Magnesium Corp. of America*, our supreme court cited and applied section 364 of the Restatement (Second) of Torts, which stated, in relevant part, that

> "[a] possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm, if . . . the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it."

942 P.2d 315, 322–23 (Utah 1997) (quoting Restatement (Second) of Torts § 364 (A.L.I. (1965)). The court proceeded to analyze whether the facts of the case fit the section's requirements, ultimately concluding that they did not and that the defendant "was clearly not liable under the Restatement." *Id.* at 323.

¶50    And in *Smith v. Bank of Utah, Inc.*, we cited, with apparent approval, section 371 of the Restatement (Second) of Torts, which stated that

> "[a] possessor of land is subject to liability for physical harm to others outside of the land caused by an activity carried on by him thereon which he realizes or should realize will involve an unreasonable risk of physical harm to them under the same conditions as though the activity were carried on at a neutral place."

2007 UT App 89, ¶ 8 n.2, 157 P.3d 817 (quoting Restatement (Second) of Torts § 371 (A.L.I. (1965)).

¶51   Thus, while neither Section 54 nor any of its predecessor sections have ever been adopted by Utah appellate courts, I discern in our caselaw no judicial hostility to their concepts. And I, for one, would be ready to consider adoption of Section 54 in an appropriate case. I thus encourage parties who find themselves embroiled in cases similar to this one to consider asking (first the district court and then) an appellate court to do so, in order to enable us to properly consider that request after full briefing.

––––––––––